STATE OF CONNECTICUT *v.* BRIAN M. BONELLO
(13219)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

52

Argued December 13, 1988—decision released February 14, 1989

*John J. Ryan,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Brown,* state's attorney, and *Stephen J. Sedensky,* assistant state's attorney, for the appellee (state).

GLASS, J. This case presents us with our first opportunity to determine whether this court's decision in *State* v. *Jarzbek,* 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), permitting the taking of videotaped testimony of a complaining child witness outside the physical presence of the defendant to be used as evidence in sexual abuse cases, is consistent with the United

States Supreme Court's subsequent decision in *Coy* v. *Iowa*, 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988).

The present case arises from allegations that the defendant, Brian Bonello, sexually abused a five year old child.[1] The defendant was charged in an amended information with the crimes of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), sexual assault in the second degree, in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a minor, in violation of General Statutes § 53-21.[2] Over the defendant's objection, the trial court, *Reilly, J.*, granted the state's pretrial motion to videotape the complainant's testimony outside of the defendant's physical presence. The videotaped testimony was admitted into evidence at the trial before *S. Freedman, J.* The jury found the defendant guilty of all charges. In the judgment rendered on the verdict, the defendant was sentenced to a total effective term of twenty years

---

[1] The defendant was initially charged in an information filed September 19, 1985. The incidents underlying the charges allegedly took place on June 19, 1985.

[2] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

General Statutes § 53a-71 (a) (1) provides: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

"[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

imprisonment, suspended after ten years, and five years probation.

The defendant appealed to the Appellate Court, claiming that the trial court had violated his constitutional right to confront the witnesses against him by permitting the complaining child witness's testimony to be videotaped outside the defendant's physical presence. He also claimed that the trial court had erred in failing to determine, as a predicate to the use of the videotape procedure, that the witness would be unable to testify in the defendant's presence. After the appeal was transferred to this court pursuant to Practice Book § 4023, we remanded the case to the trial court to conduct an evidentiary hearing to determine whether, under *State* v. *Jarzbek,* supra, the defendant's physical presence at the videotaping would seriously have called into question the trustworthiness and reliability of the complainant's testimony. On remand, the trial court, *Reilly, J.,* concluded that the state had demonstrated by clear and convincing evidence that the procedure was necessary to ensure the reliability of the complainant's testimony. The defendant now claims that the evidence was insufficient under *Jarzbek.* We find no error.

## I

The remand order was issued on October 2, 1987. On May 24, 1988, the trial court issued a memorandum of decision concluding that the use of the videotape procedure was permissible under *Jarzbek.* The defendant in the present case, as well as the defendants in other appeals pending before this court involving remands under *Jarzbek,*[3] have argued that the constitutionality of *Jarzbek* is now suspect under the United States Supreme Court's decision of June 29, 1988, in *Coy* v.

---

[3] *State* v. *Snook,* Docket No. 13218 (argued December 13, 1988); *State* v. *Spigarolo,* Docket No. 13220 (argued December 13, 1988).

*Iowa,* supra. It is therefore necessary to analyze *Jarzbek* in light of *Coy* v. *Iowa* before addressing the defendant's claim that the trial court erred in concluding that the evidence supporting the state's use of the videotape procedure was sufficient under *Jarzbek.* In analyzing the relationship of these two cases, we must determine whether *Coy* establishes as absolute the defendant's right to face-to-face confrontation with his accuser. If, however, limited abridgement of this right is permissible, we must then determine whether the specific standards set forth in *Jarzbek* to safeguard the defendant's right are consistent with *Coy.* Finally, we must determine whether *Jarzbek,* if consistent with *Coy,* is supported by a rationale sufficient to permit an abridgement of the right.

In *Jarzbek,* we surveyed several Supreme Court precedents dealing with the sixth amendment right to confrontation, and concluded that "[t]he protection that the confrontation clauses afford to a criminal defendant is not . . . absolute." *State* v. *Jarzbek,* supra, 693; see *Ohio* v. *Roberts,* 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (confrontation right not violated by introduction of hearsay statements of declarant who is unavailable at trial, if statement bears adequate indicia of reliability); *Chambers* v. *Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (right to confront and to cross-examine is not absolute and may bow to accommodate other legitimate interests); *California* v. *Green,* 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (confrontation clause not violated by admitting declarant's hearsay statements if declarant is testifying as witness and subject to full cross-examination); *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965) (adequate opportunity to cross-examine may satisfy confrontation clause in absence of physical confrontation).

Our order of remand in the present case provides a suitable summary of the standards set forth in *Jarzbek* that followed our conclusion that the right to face-to-face confrontation is not absolute. *Jarzbek* "held that the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. [*State* v. *Jarzbek,* supra], 704. Rather than adopt an across-the-board rule, however, [we] mandated a case-by-case analysis, 'whereby the trial court must balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question.' Id. Under this balancing approach, the trial court must determine whether the state has demonstrated a 'compelling need' to videotape the testimony of a minor victim outside the physical presence of the defendant sufficient to outweigh the defendant's right of confrontation. In order to satisfy its burden of proving 'compelling need,' the state must: (1) show that 'the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question'; and (2) establish proof of 'compelling need' by 'clear and convincing evidence . . .' [Id.], 705. [*Jarzbek*] clearly state[s] that the 'primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury the victim may suffer by testifying in the presence of the accused.' Id."

In *Coy* v. *Iowa,* supra, 1014–15, the United States Supreme Court considered whether a screen placed between the defendant and the complaining minor witnesses, which shielded the defendant from the witnesses' view, violated the defendant's sixth amendment confrontation rights. The court held that the right of an accused to confront his accuser "face-to-face" is at the

" 'core of the values furthered by the Confrontation Clause.' " Id., 1017, quoting *California* v. *Green,* supra, 157. It then concluded that the use of the screen, "designed to enable the complaining witnesses to avoid viewing [the defendant] as they gave their testimony," was an "obvious [and] damaging violation of the defendant's right to a face-to-face encounter." *Coy* v. *Iowa,* supra, 1020. The court rejected the state's contention that the confrontation interest at stake was outweighed by the need to protect the complaining witnesses from the trauma associated with testifying in such cases. Id. It held that although there may be exceptions to the right to face-to-face confrontation "when necessary to further an important public policy," the legislatively imposed presumption of trauma underlying the Iowa statute permitting the use of the screen was insufficient since "something more than the type of generalized finding underlying such a statute is needed when the exception is not 'firmly . . . rooted in our jurisprudence.' " Id., 1021. The court concluded that "[s]ince there have been no individualized findings that these particular witnesses needed special protection," the use of the screen was unconstitutional. Id.

Justice O'Connor, joined by Justice White, wrote a concurring opinion "to note [the] view that [the right to face-to-face confrontation is] not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices to shield a child witness from the trauma of courtroom testimony." Id., 1022. She indicated "[it is] clear that nothing in [the court's opinion] necessarily dooms such efforts by state legislatures to protect child witnesses." Id., 1023. "[A] particular trial procedure that call[s] for something other than face-to-face confrontation [is permissible if] necessary to further an important public policy. . . . The protection of child

witnesses is . . . just such a policy. The primary focus therefore likely will be on the *necessity* prong. . . . [I]f a court makes a case-specific finding of necessity . . . [o]ur cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses." (Emphasis added; citations omitted.) Id., 1025.

We conclude that *Coy* does not establish an absolute right to face-to-face confrontation. We reach this conclusion by making the following observations. First, *Coy* did not purport to overrule the precedents we relied on in *Jarzbek* to reach the conclusion that the right to face-to-face confrontation is not absolute. Instead, the court left "for another day . . . the question whether any exceptions [to the right of face-to-face confrontation] exist." Id., 1021. Second, the ratio decidendi of *Coy* was twofold: (1) that the generalized presumption of trauma underlying the Iowa statutory procedure was insufficient to overcome the right of face-to-face confrontation; and (2) the trial court had not made any "individualized findings that [the] particular witnesses needed special protection . . . ." Id. Third, Justice Scalia, in writing the opinion of the court, vigorously rebutted arguments presented in a dissenting opinion authored by Justice Blackmun, yet made no reference whatever to the emphasis in Justice O'Connor's concurring opinion that *Coy* leaves open the possibility of restrictions on the right to face-to-face confrontation that are necessary to further an important public policy. Id., 1018 n.2; see *Craig* v. *State*, 76 Md. App. 250, 544 A.2d 784 (1988) (noting significance of court's opinion's failure in *Coy* to refer to concurring opinion).

We also conclude that the *Jarzbek* standards, designed to permit intrusions on the defendant's right to face-to-face confrontation only under compelling circumstances, are consistent with *Coy* v. *Iowa*. Unlike the procedure condemned in *Coy*, *Jarzbek* requires an

individualized, case-by-case assessment of the need to resort to the videotaping of the complaining minor witness's testimony outside the physical presence of the accused. *State* v. *Jarzbek,* supra, 704. We emphasized that, "[i]n order to satisfy its burden of proving compelling need, the state must show that *the minor victim* would be so intimidated, or otherwise inhibited, by the physical presence of *the defendant* that the trustworthiness of the victim's testimony would be seriously called into question." (Emphasis added.) Id., 704–705. "We emphatically reject[ed] the proposal of the state that, in every case allegedly involving the sexual abuse of children, we should presume that the credibility of a minor victim's testimony will be improved by excluding the defendant from the witness room during that witness's testimony." Id., 704. Thus, *Jarzbek's* emphasis on a particularized finding of a compelling need to abridge the defendant's right does not conflict with the gravamen of the decision in *Coy.*

Our analysis must now focus on whether, as *Coy* requires, the exception to the right of face-to-face confrontation recognized in *Jarzbek* furthers an important public policy. *Coy* v. *Iowa,* supra, 1021. As noted above, under *Jarzbek,* "the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused." *State* v. *Jarzbek,* supra, 705. *Jarzbek* thus identified the policy of promoting the search for truth as the basis for abridging the defendant's right to face-to-face confrontation with his accuser. Id., 703–704. We observed that "a minor victim may refuse to testify or may distort his or her testimony because he or she has been threatened by the defendant or is overwhelmed by feelings of guilt. In such instances, affording the defendant the right of physical confrontation would undermine the purpose of confrontation, instead of advancing its truth-seeking goals." Id.

To determine whether this policy is a sufficient basis for abridging the defendant's right, we need look no further than the court's opinion in *Coy* itself. *Coy* did not consider whether the policy of promoting the search for truth justified an *exception* to the right to face-to-face confrontation, since the state advanced only its parens patriae interest in protecting children from the trauma associated with testifying before the accused. Nevertheless, the rationale of promoting the search for truth that underlies *Jarzbek* is identical to the concerns expressed by the United States Supreme Court in *Coy*. In recognizing the significance of the defendant's right to face-to-face confrontation, *Coy* emphasized that the truth is more likely to be adduced if the accuser is made to face the accused. "It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' In the former context, even if the lie is told, it will often be told less convincingly. . . . That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." *Coy* v. *Iowa,* supra, 1019. Thus, the priority accorded the right to face-to-face confrontation in *Coy* turned not on its intrinsic inviolability but rather on its functional value in enhancing the factfinding process of criminal trials.

Our recognition of an *exception* to the right to face-to-face confrontation in *Jarzbek* arose from the very same concern with advancing the search for truth. *Jarzbek* is designed to promote rather than restrict the sixth amendment's fundamental objective of establishing the best possible methods of ascertaining the facts within the criminal adjudicatory process.[4] The nature of the

---

[4] We note, in addition, that our holding in *State* v. *Jarzbek,* 204 Conn. 683, 707–708. 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct.

trial court's inquiry under *Jarzbek* ensures that the state will not be permitted to videotape the complaining witness's testimony outside the defendant's physical presence unless such a practice in any particular case will enhance the truth-seeking function of the criminal trial. Because the law established by *Coy* draws on the identical principle of advancing the search for truth, it would be ironic indeed if that policy were an insufficient basis to justify an abridgement of the defendant's right to face-to-face confrontation.

Our conclusion that the standards established by *Jarzbek* to permit the use of videotaped testimony of a minor victim taken outside the physical presence of the accused are consistent with *Coy* v. *Iowa* is supported by several recent decisions in other jurisdictions. See *State* v. *Tafoya,* 108 N.M. 1, 765 P.2d 1183, cert. denied, 107 N.M. 785, 765 P.2d 758 (1988) (use of videotaped testimony taken outside accused's physical presence permissible under *Coy* because specific findings required and evidence showed accuracy of testimony would be enhanced); see also *People* v. *Thomas,* 770 P.2d 1324 (Colo. App. 1988), reh. denied, January 5, 1989 (use of videotaped deposition taken outside accused's physical presence permissible under *Coy*); *Glendening* v. *State,* 536 So. 2d 212 (Fla. 1988), reh. denied, February 3, 1989 (use of videotaped testimony taken outside accused's physical presence permissible under *Coy* where trial court made particularized findings of emotional harm); cf. *State* v. *Eastham,* 39 Ohio St. 3d 307, 310, 530 N.E.2d 409 (1988) (use of videotaped testimony not permissible under *Coy* where no particularized findings of need made).

1017, 98 L. Ed. 2d 982 (1988), was also premised, as an independent and adequate state ground, on our construction of article first, § 8, of the Connecticut constitution.

## II

We next turn to the defendant's claim that the cumulative evidence presented by the state in the original pretrial motion hearing and the hearing on remand did not meet the *Jarzbek* standards. We note that the defendant does not object to the taking of the victim's testimony outside the courtroom. Nor does he claim any defect in the mechanical procedures utilized by the trial court in taking the minor's testimony. His sole claim is that the evidence adduced in the pretrial hearing and in the remand hearing did not rise to the level of clear and convincing evidence that the reliability and trustworthiness of the victim's testimony would have been seriously called into question had the victim testified before the defendant. Consequently, he claims that his conviction cannot stand. We are not persuaded.

To place the defendant's claim in proper context, it is useful at this point to describe the conditions in which the videotaped testimony was taken. The trial court's order specified that the testimony of the minor victim, who was six years old at the time, would be given in a suitable room for children in the absence of the defendant. The only persons permitted in the witness room were the judge, the state's attorney, one defense counsel, and any person who would contribute to the child's welfare. The room was equipped with a one-way mirror directly connected to a monitoring room. The order required the defendant, present in the monitoring room and not visible to those in the witness room, to see and hear the witness testify clearly. The order also permitted the defendant to communicate with defense counsel in the witness room as the witness testified by means of an ear attachment or similar device. The defendant was to be provided with complete

privacy in the monitoring room, unless he chose to have co-counsel present with him.[5]

The state presented two witnesses in the pretrial hearing on the state's motion. Jeanne O'Donnell, a social worker, testified that she interviewed the victim on five occasions during July and August of 1986. She stated that the victim would be more comfortable if not required to testify in court, and that the testimony would be more accurate. She also testified that the victim viewed the defendant as an "authority figure" and would have difficulty testifying in front of him. She stated that, in the defendant's presence, the victim would "feel somewhat intimidated." She stated further that the exclusion of the defendant would lead to more accurate testimony from the victim. She also testified that the victim's testimony under the proposed procedures would be less detrimental than if the victim were required to testify before the defendant.

---

[5] In fashioning this order, the trial court did not rely on General Statutes § 54-86g, which provides essentially the same videotaping procedure as that ordered by the trial court. As noted above, the action against the defendant was initiated on September 19, 1985. Section 54-86g became effective on October 1, 1985. Public Acts 1985, No. 85-587; see *State* v. *Jarzbek,* 204 Conn. 683, 686 n.2, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

"[General Statutes] Sec. 54-86g. TESTIMONY OF VICTIM OF CHILD ABUSE. COURT MAY ORDER TESTIMONY TAKEN OUTSIDE COURTROOM. PROCEDURE. (a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant."

The state also presented the testimony of Dr. Jean Paul Morachi, a board certified psychiatrist and medical director of the Child Guidance Center in Fairfield. O'Donnell had asked Morachi to treat the victim. Before meeting the victim, Morachi reviewed the victim's psychological history and testing with O'Donnell and spoke with the victim's mother. Morachi interviewed the victim twice. He testified that the victim suffered from hyperactivity and anxiety. Morachi testified that, in a courtroom setting, the victim "would easily be confused. I think that [the victim] would have a great deal of difficulty being able to give clear . . . and specific answers. And I think it would be hard for [the victim] not to feel very intimidated and overwhelmed as well as overstimulated by the courtroom setting." As did O'Donnell, Morachi testified that the victim perceived the defendant as an authority figure, and stated: "I think in the presence of the defendant that [the victim] would be somewhat embarrassed and also I believe somewhat intimidated." Morachi testified, however, that in the proposed videotape procedures, the victim "would be a much more accurate and much clearer witness" than otherwise.

After the pretrial hearing, the trial court, on December 11, 1986, issued a memorandum of decision, in which it found, "based on the testimony of [Morachi] and [O'Donnell], that the child's present and future well being would be detrimentally affected if [the victim] were to testify in court with the defendant present. It is the further opinion of this court that the child's testimony will be more accurate if the testimony is taken in a non-courtroom setting by means of the videotape."

The sole witness presented by the state on the remand hearing was Morachi. For the purposes of testifying at the remand hearing, Morachi had reviewed the victim's psychiatric records, notes of his interviews with the victim, and O'Donnell's reports, but had not

examined the victim after the original hearing. Morachi opined that, based on his review of the records, the victim would be a more reliable witness outside the defendant's physical presence, and that the accuracy of the victim's testimony would seriously be called into question if the defendant were present. He indicated that the defendant's presence would evoke in the victim a high degree of anxiety "that [the victim] would not have any control over and that would interfere with the reliability of [the victim's] testimony." He further testified that it was his opinion that "it isn't likely that [the victim] would be a reliable informant or reliable reporter in the presence of the defendant because of the anxiety that would arise." The defendant presented no testimony regarding the videotape procedure at either the pretrial hearing or at the hearing on remand.

On May 27, 1988, the trial court issued a memorandum of decision in which it found that "the child-victim, given [the victim's] emotional problems, youth and anxiety state, would not be able to relate accurately the alleged events if the defendant were present during [the victim's] testimony and if the defendant were present the victim's testimony would be seriously called into question. It is further the opinion of this court that said compelling need has been proven by the State by clear and convincing evidence."

The defendant claims that the testimony from both hearings reveals that the opinions provided by the state's experts were ambiguous and indecisive. He emphasizes that in the first hearing, both O'Donnell and Morachi testified that the victim would be "somewhat intimidated" by the defendant's presence, and asserts that "somewhat intimidated" does not meet the level of proof required under the language in *Jarzbek* indicating that "the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the vic-

tim's testimony would be seriously called into question." *State* v. *Jarzbek,* supra, 705. Further, he claims that Morachi's testimony on the remand hearing, which expressed a more definite opinion about the impact the defendant's presence would have on the victim's truthfulness, was an attempt to conform his opinion to the *Jarzbek* requirements, and as such was inconsistent with his opinion given in the first hearing. He also points out that neither expert witness testified that the victim "could not, or would not" testify in the accused's physical presence. Because of these alleged deficiencies in the state's proof, the defendant maintains that the trial court on remand erred in finding that the state had presented clear and convincing evidence of a compelling need to videotape the victim's testimony outside the defendant's physical presence.

"The phrase 'clear, substantial and convincing evidence' fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [T]he burden of persuasion is sustained if the evidence 'induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.' " (Citation omitted.) *Lopinto* v. *Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981).

" 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § [4061]." *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985). "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally

and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.*, supra, 221–22. In evaluating preliminary determinations of the trial court in a criminal case, "[t]he evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous." *State* v. *Vessichio*, 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986) (upholding trial court's preliminary determination, based on fair preponderance of evidence standard, that defendants participated in conspiracy to invoke co-conspirator exception to hearsay rule); see also *Brown* v. *K.N.D. Corporation*, 205 Conn. 8, 15, 529 A.2d 1292 (1987) (applying "clearly erroneous" test to trial court's conclusion that plaintiff had failed to prove actual malice in defamation case by clear and convincing evidence); cf. *Lopinto* v. *Haines*, supra, 536 (trial court's failure to apply correct standard of clear and convincing evidence in reformation case is question of law).

We conclude that the trial court's conclusion on remand that the evidence was clear and convincing that the defendant's physical presence would seriously have called into question the minor victim's reliability during the videotaping procedure was legally and logically correct, and is supported by the facts. Both expert witnesses presented by the state had firsthand knowledge of the victim's psychological status. The defendant presented no evidence to contradict the testimony of O'Donnell and Morachi that the victim would have been

intimidated by the defendant's presence, and that such intimidation would have undermined the reliability of the victim's testimony. The defendant's characterization of the pretrial testimony of both expert witnesses that the victim would be "somewhat intimidated" as insufficient under *Jarzbek* overlooks Morachi's testimony at the same hearing that the victim would be a "much more accurate and much clearer witness" if the defendant were not physically present. Morachi also testified at that hearing that the victim would "feel intimidated and embarrassed with the defendant in the videotape situation." This testimony did not qualify "intimidated" with "somewhat." In addition, the defendant's argument disregards Morachi's more specific testimony in the remand hearing that the defendant's presence "would impair [the victim's] ability to be a reliable reporter."

In any event, we are not prepared to hold on the facts of this case that the isolated testimony of the state's expert witnesses in the pretrial hearing that the victim would be "somewhat intimidated" by the defendant's physical presence establishes, as a matter of law, that the state has not presented clear and convincing evidence of a compelling need to resort to the videotape procedure. As noted above, *Jarzbek* requires the state to show that the victim would be "so intimidated, or otherwise inhibited," by the defendant's physical presence that the victim's reliability as a witness "would be seriously called into question." *State* v. *Jarzbek,* supra, 705. The modifier "so" in this context means "to an indicated or suggested extent or degree." N. Webster, Third New Collegiate Dictionary. The "indicated . . . extent" of the intimidation or inhibition necessary to establish a compelling need to take the witness's testimony outside the defendant's physical presence is that which would "seriously [call] into question" the victim's truthfulness. In the context of

the *Jarzbek* language, the term "so intimidated" does not exclude the possibility that a victim's reliability as a witness may be seriously called into question as a result of his being "somewhat intimidated" by the defendant's physical presence. As we emphasized in *Jarzbek,* each case must be analyzed on its own facts. Id., 704.

The defendant's claim that Morachi attempted to conform his opinion in the remand hearing to the *Jarzbek* requirements, leading to an inconsistency between his pretrial and remand hearing testimony, is not supported by the record. The record shows that, at the pretrial hearing, the major focus of the state's direct examination of Morachi was on whether the victim's testimony would be affected by the stimulation of a courtroom environment, and whether the defendant's presence, either in a courtroom or videotaping setting, would be traumatic to the victim. Indeed, on cross-examination, defense counsel focused almost exclusively on whether steps could be taken to minimize the trauma the victim might experience if required to testify in court. We remanded this case for a further hearing because counsel did not conduct the pretrial hearing with an awareness of the *Jarzbek* criteria. Our order of remand obviously contemplated that the parties would direct their evidence toward the specific question of the victim's reliability as a witness. Morachi's more definitive opinion in the remand hearing on the effect that the defendant's presence would have on the victim's reliability as a witness resulted from more specific questions directed toward that issue. Moreover, the record does not disclose that Morachi attempted to modify his conclusion that the victim would be "somewhat intimidated" by the defendant's presence. Indeed, on cross-examination, Morachi testified that his previous testimony of "somewhat intimidated" was accurate.

Further, the defendant's focus on alleged inconsistencies in Morachi's testimony at the two hearings is in essence an attack on the witness's credibility. As we have so often noted, "[i]t is the sole province of the trier of fact to evaluate expert testimony, to assess its credibility, and to assign it a proper weight. *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983); *State* v. *Gordon,* 185 Conn. 402, 409, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Perez,* 182 Conn. 603, 610, 438 A.2d 1149 (1981)." (Emphasis added.) *State* v. *Jarzbek,* supra, 706; see also *State* v. *Shipman,* 195 Conn. 160, 165, 486 A.2d 1130 (1985) (it is for trier of fact to determine credibility of witnesses). At the remand hearing, the defendant on cross-examination had ample opportunity to explore the alleged inconsistency in Morachi's testimony, and to challenge his credibility on the theory that Morachi was simply seeking to conform his opinion to the *Jarzbek* requirements. Unlike this court, the trial judge on remand had the opportunity to evaluate Morachi's testimony as it was given.

The defendant finally asserts that there was insufficient evidence of compelling need to videotape the victim's testimony outside the defendant's physical presence because neither of the state's two expert witnesses testified that the victim "could not, or would not" testify in front of the defendant. He argues that when an alleged victim has exhibited no apprehension about testifying in the defendant's presence, the victim must testify in his presence. We disagree. The defendant's argument ignores the nature of the inquiry mandated under *Jarzbek.* The question is not whether the victim conceivably could testify in front of the accused, but whether, if the victim were required to do so, his reliability as a witness would seriously be called into question. Moreover, in the present case, the state's expert witnesses both testified that the victim

would experience anxiety and trauma if required to testify before the defendant, and that these reactions would render the victim's testimony less reliable. This evidence was, in fact, evidence that the victim would experience apprehension if required to testify in the defendant's presence. The fact that the evidence did not show that the victim had expressly indicated apprehension over the prospect of testifying in the defendant's presence was a matter for the trial court to consider. We cannot conclude that the absence of such evidence rendered the trial court's conclusion clearly erroneous.

Because the facts in the record support the trial court's decision on remand, the trial court was not clearly erroneous in concluding that there was clear and convincing evidence that the defendant's physical presence would seriously have called into question the victim's reliability and trustworthiness as a witness. *State v. Jarzbek,* supra.

There is no error.

In this opinion the other justices concurred.