[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant moves for summary judgment on the plaintiff's complaint which alleges a retaliatory discharge in violation of General Statutes § 31-290a.[1] The court holds that the defendant is entitled to summary judgment.
The plaintiff was an employee of the defendant, Yale-New Haven Hospital. His complaint alleges that in November of 1990, he was injured during the course of his employment. Thereafter the plaintiff notified the defendant of his injuries and applied for and received workers' compensation benefits. Approximately seventeen months later, in April, 1992, the plaintiff re-injured himself in the course of his employment with the defendant. Again the plaintiff notified the defendant of his injuries and applied for and received workers' compensation benefits. Upon his return to work after his second injury, the plaintiff alleges, he "was discriminated against by the [d]efendant in violation of Connecticut General Statutes § 31-290a." Specifically, the plaintiff alleges that "on or about December 11, 1992, the [d]efendant terminated the plaintiff."
The defendant's motion for summary judgment challenges the merits of the plaintiff's claim under § 31-290a. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the CT Page 6308 pleadings, from which the material facts alleged in the pleadings can be warrantably inferred." United Oil Co. v. Urban DevelopmentCommission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "Although the burden of showing the nonexistence of any material fact is on the party seeking summary judgment, the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . .' (Internal quotation marks omitted.) Danziger v. Shaknaitis, [33 Conn. App. 6, 9, 632 A.2d 1130 (1993)]; Nardi v. AA ElectronicSecurity Engineering, Inc., 32 Conn. App. 205, 209, 628 A.2d 991
(1993); Cortes v. Cotton, 31 Conn. App. 569, 572-73,6262 A.2d 1306 (1993). In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. Scrapchansky v. Plainfield, [226 Conn. 446, 450, 627 A.2d 1329 (1993)]; Nardi v. AAElectronic Security Engineering Inc., supra. The test to be applied would be whether a party would be entitled to a directed verdict on the same facts. Danziger v. Shaknaitis, supra, 10; Cortes v. Cotton, supra." Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v.Romeo, 46 Conn. App. 277, 282, 699 A.2d 217 (1997); see alsoMullen v. Horton, 46 Conn. App. 759, 763, 700 A.2d 1377
(1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed).
General Statutes "[s]ection 31-290a was designed to protect employees who file for workers compensation benefits." Chiaia v.Pepperidge Farm, Inc., 24 Conn. App. 362, 365-66, 588 A.2d 652, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). "In setting forth the burden of proof requirements in a § 31-290a
action," the Supreme Court has held, "we look to federal law for guidance." Ford v. Blue Cross Blue Shield of Connecticut, Inc.,216 Conn. 40, 53, 578 A.2d 1054 (1990).
"In McDonnell Douglas Corporation v. Green, 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the basic allocation of the burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving CT Page 6309 by a preponderance of the evidence a prima facie case of discrimination. Id., 802. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. Texas Department of Community Affairsv. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207
(1981). If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. McDonnell DouglasCorporation v. Green, supra. `If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.' Texas Department of Community Affairs v.Burdine, supra, 255. The plaintiff then must satisfy her burden of persuading the fact finder that she was the victim of discrimination `either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' Id., 256." Ford v. BlueCross Blue Shield of Connecticut, Inc., supra, 210 Conn. 53-54.
Thus, under the burden shifting formula of McDonnell DouglasCorporation v. Green, the plaintiff is initially required to establish a prima facie case of retaliatory discharge. "The [plaintiff] must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the [employee] because [he] had exercised [his] rights under the Workers' Compensation Act. Id., 53-54. Without some proof of an improper motive, [a plaintiff's] case must fail. See Id.' Chiaiav. Pepperidge Farm, Inc., supra, 366." Erisoty v. Merrow MachineCo., 34 Conn. App. 708, 711, 708 A.2d 643, cert. denied,231 Conn. 908, 648 A.2d 151 (1994).
Preliminarily, the plaintiff in his opposition memorandum observes that cases of retaliatory discrimination necessarily involve questions of motive and intent, and as such, summary judgment is generally inappropriate for their disposition. Although the plaintiff's argument is a fair statement of the law, it is well recognized that "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc.v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506 (1992); see Cliffv. Board of School Commissioners of City of Indianapolis,42 F.3d 403, 438 (7th Cir. 1994) (plaintiff cannot defeat summary CT Page 6310 judgment on discrimination claim simply because issues of motive or intent are involved if she fails to produce evidence of a motive or intent that would support her position); Lewis v. Cityof Ft. Collins, 903 F.2d 752, 755 (10th Cir. 1990); see alsoAyala-Gerena v. Bristol Myers Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); Burns v. City of Columbus, 91 F.3d 836, 841-42 (6th Cir. 1996).
Since the Connecticut Supreme Court has adopted the McDonnellDouglas shifting burden analysis for cases involving retaliatory discharge and employment discrimination, it is appropriate to look to federal employment discrimination law as a guide for the application of the test to the facts of this case on defendant's summary judgment motion. Cf. Blakeslee Arpaia Chapman, Inc. v. EIConstructors, Inc., 239 Conn. 708, 716, 687 A.2d 506 (1997).
Unlike other areas of the law, where a defendant files a motion for summary judgment challenging the merits of an employment discrimination claim, the plaintiff has an initial burden of persuasion, albeit an attenuated one. As the Second Circuit has recently held, "[t]he burden that an employment discrimination plaintiff must meet in order to defeat summary judgment at the prima facie stage is de minimis." McClee v.Chrysler Corporation, 109 F.3d 130, 134 (2nd Cir. 1997); see alsoDe La Cruz v. New York Human Resources Administration Dept. ofSocial Services, 82 F.3d 16, 20 (2nd Cir. 1996). The de minimis standard as applied to the plaintiff's burden of proof to establish a prima facie case of discrimination when a defendant files a motion for summary judgment has been widely accepted in federal case law. See, e.g., Essex v. United Parcel Service,Inc., 111 F.3d 1304 (7th Cir. 1997); Morgan v. Hilti, Inc.,108 F.3d 1319 (10th Cir. 1997); Henson v. Liggett Group,Incorporated, 61 F.3d 270 (4th Cir. 1995).
In the present context, the plaintiff, to make out a prima facie case of retaliatory discharge, must establish (a) that he has filed a claim for workers' compensation benefits or otherwise exercised his rights under chapter 568 of the Connecticut General Statutes; (b) an employment action disadvantaging the plaintiff and © a causal connection between the protected activity and the adverse employment action. Cf. Morgan v. Hilti, Inc.,108 F.3d 1319, 1324 (10th Cir. 1997); Johnson v. Palma, 931 F.2d 203,207 (2nd Cir. 1991); DuBois v. State of New York, 966 F. Sup. 144,147 (N.D.N.Y. 1997); Hill v. Pinkerton Security InvestigationServices, Inc., 977 F. Sup. 148, 158 (D.Conn. 1997). CT Page 6311
Both parties' evidence shows that the plaintiff has established his prima facie case with respect to the first two elements of the test. First, there is no dispute that the plaintiff had made a claim for and was collecting worker's compensation benefits. Second, the plaintiff's employment was subsequently terminated.
With respect to the third element, the law is that "`a causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly
through evidence of retaliatory animus directed against a plaintiff by the defendant.'" (Emphasis in original.) Johnson v.Palma, supra, 931 F.2d 207, citing DeCintio v. Westchester CountyMedical Center, 821 F.2d 111, 115 (2nd Cir.), cert. denied,484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). "`[A]dverse action directly follow[ing] the filing of an administrative charge is sufficient to establish the requisite causal connection.'" (Emphasis added.) DuBois v. State of New York, supra, 966 F. Sup. 148, citing Johnson v. Palma, 931 F.2d 203, 208
(2nd Cir. 1991). "[A] causal connection may be established indirectly by showing that the protected activity was closely followed in time by the discriminatory treatment." Hill v.Pinkerton Security Investigation Services, Inc., supra,977 F. Sup. 158.
In his affidavit, the plaintiff states that the defendant's supervisors unlawfully discriminated against him by instructing him to perform work that violated his medically authorized work restrictions. What kind of work and what restrictions are not disclosed. See Lawrence v. National Westminster Bank of NewJersey, 98 F.3d 61, 69 (3rd Cir. 1996). The claim, as made, is very vague. "Mere conclusory allegations and assertions will not suffice" to defeat a motion for summary judgment in this area of the law. Early v. Champion Intern. Corp., 907 F.2d 1077, 1081
(11th Cir. 1990); see also Helfter v. United States ParcelService, 115 F.3d 613, 616 (8th Cir. 1997); Fennell v. First StepDesigns, Ltd., 83 F.3d 526, 535 (1st Cir. 1996); Wallace v. TexasTech University, supra, 80 F.3d 1047; Kohler v. Ericsson, Inc.,847 F.2d 499, 501 (9th Cir. 1988).
The plaintiff also attempts to draw an inference of unlawful discrimination by claiming that the defendant's supervisors CT Page 6312 treated him differently upon his return to work after suffering his work-related injuries. The plaintiff states in his affidavit that "[d]uring this period of time my employer's treatment of me was substantially different than it was previously." Again the claim is vague. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733-34
(4th Cir. 1996) (claim that supervisor particularly disliked plaintiff insufficient evidence that supervisor intended to force her out, as required to support claim of constructive discharge in violation of ADA). In his deposition the plaintiff states that the defendant's supervisors had an "attitude" towards him, and that the supervisors believed he was a "slacker" and not really injured. Again, conclusory allegations and unsupported speculation are not sufficient to create a material question of fact to defeat a well-documented motion for summary judgment.Harbour v. Dynamics Research Group Corp., 63 F.3d 32, 37 (1st Cir. 1995). It makes no difference that the speculation and conclusions are contained in an affidavit or in a deposition.Helfter v. United Parcel Service, supra, 115 F.3d 616; seeWallace v. Texas Tech University, supra, 80 F.3d 1047, 1048 n. 6.[2] Here, we do not even have the stray remarks or isolated references that have been found insufficient to prove discrimination or causation. See Ayala-Gerena v. Bristol MyersSquibb Co., supra, 95 F.3d 95, citing Price Waterhouse v.Hopkins, 490 U.S. 288, 251-52, 109 S.Ct. 1775, 104 L.Ed.2d 268
(1989) (plurality opinion); id., at 277-78 (O'Connor, J.,concurring) (direct evidence of intent to discriminate does not include stray remarks by decision makers unrelated to the decision making process itself since, while perhaps probative of discrimination, such remarks lack the necessary link between the speaker's discrimination and the adverse employment decision);Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 684 (7th Cir. 1996) (isolated reference to plaintiff as "old lady" without knowing context, insufficient to prove defendant lied about reasons for terminating her). Moreover, the plaintiff does not offer any time frame for when this allegedly disparate treatment occurred, or any specific incident from which the court might infer a discriminatory motive.[3] As the court in Rand v. CFIndustries, Inc., 42 F.3d 1139, 1146 (7th Cir. 1994), stated: "InVisser v. Packer Engineering Associates, Inc., 924 F.2d 655 (7th Cir. 1991), this court affirmed the grant of summary judgment despite affidavits alleging a discriminatory animus, precisely because those affidavits did not contain specific facts supporting their conclusory allegations. Id. at 659-660. Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and CT Page 6313 `[d]iscrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives. There would be no summary judgments in . . . discrimination cases.' Id. at 659 (citations omitted)."
Lastly, the plaintiff offers his performance review records as evidence of the defendant's discriminatory motives. The plaintiff states that his performance ratings were either "very good" or "good" in most categories, and that only after his workers' compensation claims is there a change in the performance reviews. The evidence, however, does not support the plaintiff's conclusion. The plaintiff's first claim for workers' compensation benefits was filed in October, 1990, yet he still received mostly good reviews concerning his work performance in his November, 1990, review. After the plaintiff's one year evaluation in November, 1991, he again received mostly satisfactory and good reviews, although he had previously received workers' compensation benefits.
In the performance evaluations offered as evidence of discrimination, the plaintiff's attendance evaluation is always either average or unsatisfactory. Moreover, the period of time in which the plaintiff's performance reviews were conducted is not contemporaneous with the plaintiff's termination. See Rand v. CFIndustries, Inc., supra, 42 F.3d 1146. The plaintiff was terminated effective November 25, 1992; the last performance review the plaintiff offers as evidence of discrimination was conducted a year earlier, on November 11, 1991.
However, given the de minimis standard for the plaintiff's burden to present a prima facie case, the court will assume without deciding that the plaintiff has satisfied the third element and has established a prima facie case. "On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Fennell v. First StepDesigns, Ltd., supra, 83 F.3d 535.
The defendant is entitled to summary judgment since it has rebutted any presumption of discrimination with overwhelming evidence of a legitimate nondiscriminatory reason for its actions. Ford v. Blue Cross Blue Shield of Connecticut, Inc.,
CT Page 6314 supra, 216 Conn. 54.
Assuming that the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence that it had a legitimate, nondiscriminatory reason for terminating the plaintiff. Bradley v. Harcourt, Brace Co., 104 F.3d 267, 270
(9th Cir. 1996); St. Mary's Honor Co. v. Hicks, 509 U.S. 502,506-507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To rebut the plaintiff's prima facie case, the defendant "must `produce evidence for its actions, that is, it must show that the employment action was taken for a legitimate, nondiscriminatory reason.'" Bradley v. Harcourt, Brace Co., supra, quoting St.Mary's Honor Co. v. Hicks, supra, 509 U.S. 506-507. The defendant has satisfied this burden by making a substantial showing that the plaintiff was discharged because of chronic absenteeism without notifying his supervisor that he would be absent, in violation of the defendant's attendance policies.
It is widely recognized that "absence control" policies that are neutrally applied, even if they make no distinction between work-related and non-work related injuries, are not per se violative of General Statutes § 31-290a. Chiaia v. PepperidgeFarm, Inc., 24 Conn. App. 362, 364-65, 588 A.2d 652, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). While a significant number of jurisdictions have recognized the tort of retaliatory discharge, either through statute or judicial decision "[f]ew courts have expanded the definition of discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected workers' compensation benefits. See Gallant v. Sandoz,Inc., [192 N.J. Super. 403, 410, 470 A.2d 45 (1983), aff'd,196 N.J. 568, 483 A.2d 829 (1984); Smith v. Electrical SystemDivision of Bristol Corporation, [557 N.E.2d 711 (Ill.App. 1990)]; Realigned v. Val Agree, Inc., [13 Kan. App. 2d 149,766 P.2d 819 (1988); Clifford v. Cactus Drilling Corporation,419 Mich. 356, 353 N.W.2d 469 (1984); Davis v. Richmond Special RoadDistrict, 649 S.W.2d 252 (Mo.App. 1983); Mitchell v. St. LouisCounty, [575 S.W.2d 813 (Mo.App. 1983)]; Duncan v. New YorkState Developmental Center, [63 N.Y.2d 128, 470 N.E.2d 820
(1984)]; Johnson v. Saint Francis Hospital, Inc., 759 S.W.2d 925,928 (Tenn.App. 1988)." Chiaia v. Pepperidge Farm, Inc., supra,24 Conn. App. 367.
The defendant's Human Resources Policy and Procedures Manual establishes the general attendance policy under which all CT Page 6315 employees are covered. Section E. 1. of the policy states: "It is the responsibility of employees who will be unable to report to work at the beginning of their scheduled shift to notify their department before the start of the scheduled shift. . . ." Furthermore, Section E. 2. of the policy states: "An employee absent without prior notice, or without prior approval by the department head or supervisor for three (3) consecutive scheduled work days will be considered as having voluntarily resigned without notice." The term "absence" as used in the policy means: "Unscheduled absence — An unscheduled absence is any scheduled work period that an employee missed without prior approval by the employee's department." An exception, however, to the definition of unscheduled absences is created for absences attributable to workers' compensation. Thus, workers' compensation absences are not to be used in calculating an employee's absenteeism. However, even if such was done here, the defendant would have met its burden of showing a nondiscriminatory reason for the plaintiff's discharge. A nondiscriminatory mistake by the employer is not transmogrified into an act of discrimination simply because that is the nature of the plaintiff's lawsuit. Schultz v. GeneralElectric Capital Corp., 37 F.3d 329, 333-334 (7th Cir. 1994). "`[T]here is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or bad business judgment.' Kralman [v. Illinois Dept. ofVeterans' Affairs, 23 F.3d 150, 156 (7th Cir. 1994)]; McCoy v.WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)]. And we are not concerned with the correctness or desirability of [the employer's] stated reasons for its act on."Rand v. CF Industries, Inc., supra, 42 F.3d 1146. General Statutes § 31-290a prohibits action by the employer "because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to theprovisions of this chapter [568]." (Emphasis added.) Nothing in chapter 568 of the General Statutes confers on a workers' compensation claimant the right to absent himself from work without his employer's prior approval. See Chiaia v. PepperidgeFarm, Inc., supra, 24 Conn. App. 366.
In addition to the defendant's general attendance policy, the plaintiff also was subject to a supplemental policy for the Environmental Services Department. This supplemental policy is tailored to the employees specifically working in the buildings services department. The supplemental policy provides in pertinent part: "3. Dependability, a. If you are ill or unable to CT Page 6316 report to work for any other reason, you . . . must call the Environmental Services Supervisor on duty. . . ." The policy further states: "Unexcused absences and Tardiness. The department adheres to the Hospital Wide Attendance Policy. Excessive absenteeism . . . will result in progressive disciplinary action, that ranges from verbal counseling to termination."
It is uncontroverted that the plaintiff was absent forty five days in 1990, twenty one days in 1991 and through his last day worked on October 20, 1992, the plaintiff was absent seventy days. Moreover, from October 21 through October 28, 1992, the plaintiff was absent every day from work. However, under the hospital's attendance policies, absences attributable to workers' compensation are not to be included when calculating an employee's absentee rate. As documented in the Department of Building Services' attendance records, some of the plaintiff's absences recorded in the daily log during this time are listed as "WC," or "workers' compensation." Therefore, those absences ought not to have been counted towards the plaintiff's absenteeism. However, as discussed supra, this mistake does not constitute unlawful discrimination. See Rand v. CF Industries, Inc., supra, 42 F.2d 1146; Schultz v. General Electric Capital Corp., supra, 37 F.2d 333-334.
Apart from the defendant's mistake under its Human Resources Policy and Procedures Manual, the evidence as a whole clearly rebuts the plaintiff's prima facie case of discrimination and shows that the plaintiff's employment was terminated for absenteeism that did not include absences for injuries related to workers' compensation.
On November 23, 1992, Kent Zergiebel, Director of the Building Services Department, sent a letter to the plaintiff, informing him that he had been repeatedly absent without proper notice in violation of hospital policy. In the letter, Zergiebel specifically indicated that the plaintiff had been absent without proper notice for thirteen days, from November 10, 1992 to November 23, 1992, the date of the letter, and that it was imperative that the plaintiff contact Zergiebel concerning this absence. Otherwise, the letter stated, the defendant would consider the plaintiff's unauthorized absence as a voluntary resignation from his position in the Building Services Department. On November, 24, 1992, the plaintiff spoke with Zergiebel concerning the letter. Zergiebel states in his affidavit that he reminded the plaintiff of the hospital's CT Page 6317 attendance policy, and that the plaintiff had to comply with this policy in the future. Furthermore, Zergiebel states that he told the plaintiff that "under the policy, only employees with a medical clearance from a physician indicating that they could not work for a specified period of time were excused from the call-in requirement." Finally, Zergiebel states that the plaintiff acknowledged that he did not have any such medical clearance for this period of time and, therefore, he was not exempt from the call-in requirement.
The plaintiff's affidavit does not address this meeting with Zergiebel, but his deposition does shed some light on the conversation. In his deposition the plaintiff states that he was not sure whether the hospital had a doctor's letter that would exempt him from the call-in requirement. Of course, such uncertain and unsupported speculation advances the plaintiff's case not at all. See Helfter v. United Parcel Service, supra, 115 F.3d 616; Harbour Dynamics Research Corp., supra, 63 F.3d 37. The plaintiff also states that he did not call in every day when he missed work; he only called in on the first full day when he was going to be out for an extended period of time. For instance, the plaintiff when asked about whether he called in during the stretch of absences in November, 1992, he states, "I had called in the first day of that [fourteen] days and I had not called in the rest because that was the way we — I had been doing it."
On November 25, 1992, the day following the discussion between the plaintiff and Zergiebel, the plaintiff again failed to report to work or to notify his supervisor that he would be absent. Thereafter, the plaintiff stopped attending work altogether, and no call was ever made to the defendant's supervisors explaining the plaintiff's absences. Finally, no medical documentation concerning this period of time explaining the plaintiff's absence was ever given to Zergiebel. On December 11, 1992, Zergiebel wrote to the plaintiff and informed him that pursuant to their previous conversation of November 24, and in accordance with Personnel Policy #B:12, E.(2), the plaintiff was considered to have "voluntarily resigned," effective November 25, 1992.
In light of the evidence presented by both parties, the defendant is entitled to summary judgment as a matter of law. Beyond doubt, the plaintiff was terminated for his failure to comply with the defendant's attendance policy. The plaintiff has offered no evidence that he called each day he was absent CT Page 6318 although he was aware of the defendant's attendance policy, or that the defendant was in possession of medical documentation that would allow the plaintiff to forego the call-in requirement.
The record refutes any suggestion that the defendant had a discriminatory motive or intent when it terminated the plaintiff's employment. The plaintiff filed for workers' compensation on two separate occasions, on October 8, 1990, and April 30, 1992. On both occasions the plaintiff received workers' compensation benefits. The temporal interval between the plaintiff's original filing for the worker's compensation benefits and the ultimate termination of his employment, even when viewed in the light most favorable for the plaintiff, does not give rise to a reasonable inference of discrimination. The plaintiff received worker's compensation benefits periodically for over two years before he was terminated. Furthermore, the plaintiff could have continued to work for the defendant and receive workers' compensation benefits indefinitely, if only he had complied with the defendant's attendance policies.
Additionally, the defendant has provided evidence that it did not possess any medical documentation that would allow the plaintiff to miss work from the period of November 4, through December 11, 1992. And, based upon the evidence before the court, it is abundantly apparent that the plaintiff had a history of attendance problems, most of which were not related to any of his workers' compensation claims. Notably, the defendant repeatedly warned the plaintiff of this ongoing attendance problem through the use of performance reviews and by periodic verbal warnings.
It is undisputed that from November 4, 1992, through December 11, 1992, the plaintiff attended work once — and that was for a meeting with the plaintiff's supervisor on November 24, 1992, in which the defendant offered the plaintiff a chance to retain his position. This supports the defendant's contention that the reason for its discharging the plaintiff was nondiscriminatory. See Giannopoulos v. Brach Brock Confections, Inc.,109 F.3d 406, 411-412 (7th Cir. 1997); see also Morgan v. Hilti, Inc.,
supra, 108 F.3d 1324-1325. Yet, the plaintiff opted to disregard the defendant's offer to start anew, and was terminated on December 11, 1992, effective November 25, 1992. When the plaintiff missed work during the three week period immediately preceding the meeting on November 24, 1992, he was in violation of the defendant's attendance policy and subject to voluntary resignation if he failed to call-in.[4]
CT Page 6319
Finally, the plaintiff has failed to present evidence of a pretextual animus on the part of the defendant for the purportedly legitimate discharge of the plaintiff. "To defeat a summary judgment motion, [the plaintiff] would have to present evidence establishing a reasonable inference [that] the employer's proffered, nondiscriminatory explanation is pretextual." Meredity v. Beech Aircraft Corp., 18 F.3d 890, 897
(11th Cir. 1994); see Ford v. Blue Cross Blue Shield of Connecticut,Inc, supra, 216 Conn. 53-54. In opposing a former employer's motion for summary judgment, "a plaintiff can prove pretext either by presenting direct evidence that a discriminatory reason motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory."Essex v. United Parcel Service, Inc., 111 F.2d 1304, 1310 (7th Cir. 1997) (summary judgment). "In examining pretext, the question is whether the employer honestly believed its proffered reason for discharge." Id. That is, "[p]retext `means a lie, specifically a phony reason for some action." Russell v. ACME-EvansCo., 51 F.3d 64, 68 (7th Cir. 1995).
The plaintiff, in attempting to satisfy this third element of the test, has offered a cursory and highly speculative explanation for the defendant's conduct. The plaintiff states that "while the [d]efendant contends in its [m]otion that it was justified in terminating the [p]laintiff for unexcused absences, the plaintiff denies those claims in his deposition, in his affidavit, and his discovery responses which disclosed the doctor's notes." Mere denials, speculation and unsubstantiated allegations, however, will not suffice to show pretext. Rand v.CF Industries, Inc., supra, 42 F.3d 1146-47. "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . . The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." (Citations and internal quotation marks omitted.) Daily v. New Britain MachineCo., 200 Conn. 562, 568-69, 512 A.2d 893 (1986). Moreover, the CT Page 6320 plaintiff's evidence, in the form of doctor's notes excusing him from work, do not correspond to the period of time on which the defendant based its decision to terminate the plaintiff's employment.
"[T]o prevent summary judgment, [the plaintiff] must present evidence that [the defendant] is insincere when it claims to have discharged [the plaintiff] for [failure to comply with the attendance policy]." Essex v. United Parcel Service, Inc., supra, 111 F.2d 1310. "To defeat a properly supported motion for summary judgment, the plaintiff must `produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reason proffered by the employer were false [sic], and that more likely than not the employee's [workers' compensation claim] was the real reason for the discharge.'" Viola v. Philips MedicalSystems of North America, 42 F.3d 712, 714 (2nd Cir. 1994), citing Woroski v. Nashua Corp. , 31 F.3d 105, 110 (2nd Cir. 1994).
This is not a close case. The plaintiff was discharged for chronic absenteeism without notifying his supervisor that he would be absent, in violation of the defendant's attendance policies. "[S]ummary judgment procedure is designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried. . . . It is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." (Internal quotation marks omitted.) Mac's Car City, Inc. v.American National Bank, 205 Conn. 255, 261, 532 A.2d 1302 (1987). In light of the full record before the court, the plaintiff's claim is indeed frivolous. Were the parties and the judicial system to suffer a "full-dress trial" in this matter, the defendant would be entitled to a directed verdict. Gabrielle v.Hospital of St. Raphael, supra, 33 Conn. App. 383. For this reason, the defendant's motion for summary judgment is granted.
BY THE COURT
Bruce L. LevinJudge of the Superior Court