The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

## STATE OF CONNECTICUT *v.* STEPHEN CASSIDY
### (15101)

Peters, C. J., and Callahan, Borden, Berdon, Katz, Norcott and Palmer, Js.[1]

---

[1] This case was originally heard by five justices of this court. Subsequent to oral argument, however, the court unanimously decided sua sponte to consider the case en banc.

Argued September 22, 1995—decision released February 27, 1996

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, executive assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Joseph T. Corradino*, assistant state's attorney, for the appellee (state).

PALMER, J. A jury found the defendant, Stephen Cassidy, guilty of the crimes of kidnapping in the first degree in violation of General Statutes § 53a-92, robbery in the first degree in violation of General Statutes § 53a-134, unlawful restraint in the first degree in violation of General Statutes § 53a-95, and failure to appear in the first degree in violation of General Statutes § 53a-172.[2] The defendant has appealed[3] from the judgment

---

[2] General Statutes § 53a-92 provides in relevant part: "Kidnapping in the first degree: Class A felony. (a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ."

General Statutes § 53a-134 provides in relevant part: "Robbery in the first degree: Class B felony. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

General Statutes § 53a-95 provides in relevant part: "Unlawful restraint in the first degree: Class D felony. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

General Statutes § 53a-172 provides in relevant part: "Failure to appear in the first degree: Class D felony. (a) A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail or promise to appear."

[3] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony,

of the trial court sentencing him to a term of imprisonment of forty-three years.[4] Although we affirm the judgment of conviction rendered by the trial court as to the failure to appear count, we conclude that the defendant is entitled to a new trial on the remaining charges because certain improper comments made by the prosecutor during his closing argument to the jury impermissibly infringed upon the defendant's right under the federal and state constitutions to be present throughout the trial.

The jury reasonably could have found the following facts. On the evening of December 27, 1992, the victim, a nineteen year old male college student and part-time tennis instructor, drove to the Bayview shopping plaza in Bridgeport for the purpose of meeting men who might be interested in having sexual relations with him.[5] Shortly after the victim had arrived at the shopping plaza, the defendant pulled up alongside the victim's vehicle in his own car. The two men, who remained in their cars, introduced themselves and, during a conversation that lasted approximately fifteen or twenty minutes, expressed their mutual interest in having sexual relations. The defendant indicated that he knew of a nearby street where they could go to engage in such activity, and the two men, driving separately, proceeded to a secluded location on Hawley Street behind St. Vincent's Hospital in Bridgeport. The two men parked their vehicles on that street, and the defendant exited his car, entered the victim's vehicle and began to perform fellatio on the victim.

or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[4] The trial court sentenced the defendant to consecutive prison terms of twenty years on the robbery count, fifteen years on the kidnapping count, three years on the unlawful restraint count and five years on the failure to appear count.

[5] The defendant had previously encountered such men at the shopping plaza and, on at least one prior occasion, the victim had engaged in sexual relations with a man he had met there.

After one or two minutes, the defendant disengaged and pulled a jackknife on the victim, demanding all of the victim's money. The victim, who was not carrying his wallet, gave the defendant $4, which was all the cash that the victim had in his possession. The defendant then searched the front passenger compartment of the victim's car for more money and, unable to find any, told the victim that he needed more than $4 because he had "a wife and two kids and a mortgage to meet tomorrow." The defendant inquired whether the victim had an automatic bank teller card, and the victim responded that he did not have his card with him. The defendant, still brandishing the jackknife, directed the victim to drive to his home to retrieve his bank card and whatever cash he had at his residence. The victim thereupon proceeded to drive in the direction of his home, which was located in the north end of Bridgeport. On the way, however, the victim told the defendant that he was only sixteen years of age and that his grandparents, with whom he resided, would be suspicious if he returned home and then left immediately.[6] The defendant, convinced that it would not be prudent to proceed to the victim's residence, directed the victim to take him back to his car. Upon their return to Hawley Street, the defendant warned the victim not to notify the police about what had occurred. The defendant then exited the victim's car, entered his own vehicle, and drove away.

Notwithstanding the defendant's admonition not to contact the authorities, the victim, who had recorded the license plate of the automobile operated by the defendant, reported the incident to the Bridgeport police a short time later. On the basis of the information provided to the police by the victim, the defendant was apprehended, identified by the victim and charged.

[6] As previously indicated, the victim was actually nineteen years old at the time.

At trial, the state also introduced evidence that the defendant had been arrested on November 25, 1992, for a felony violation unrelated to his subsequent encounter with the victim. The state's evidence indicated that the defendant had been released in that earlier case on his promise to appear in court on December 7, 1992, and thereafter, as required; that he had appeared in court on December 7, 1992, at which time the judge continued his case until December 21, 1992, and ordered him to return on that date; that he had failed to appear in court on December 21; and that he had also failed to notify the court on or before December 21 of his inability to be present in court on that date.

The defendant testified at trial in his own defense. With respect to the kidnapping, robbery and unlawful restraint charges, the defendant admitted performing fellatio on the victim at the Bayview shopping plaza on the evening of December 27, 1992. The defendant claimed, however, that he was a prostitute who, as on prior occasions, had gone to the shopping plaza that night for the purpose of obtaining money in return for sex. The defendant further testified that when the victim told him that he wanted oral sex, the defendant informed him that it would cost $20. The victim agreed and followed the defendant to Hawley Street, where the two men parked their cars. The defendant got out of his car and into the victim's vehicle and began to perform fellatio on the victim.

Shortly thereafter, a Bridgeport police officer drove by in a police cruiser and parked nearby. According to the defendant, the victim became alarmed and terminated their sexual activity. The defendant, however, informed the victim that he would still have to pay for the defendant's services. Upon learning that the defendant expected to be paid whether or not the two men resumed their sexual relations, the victim drove to a nearby parking lot so that he and the defendant

could continue their sexual activity out of the view of the police officer.

Before agreeing to resume oral sex, however, the defendant insisted on payment in full. According to the defendant, the victim then handed him $4, which the victim indicated was all the money that he had in his possession. The defendant told the victim that the payment was insufficient, whereupon the victim suggested that he could drive home to obtain additional money. The defendant initially agreed with this suggestion, and the two men, traveling in the victim's car, started toward the victim's home. The defendant testified that he soon changed his mind about driving to the victim's residence, however, because he did not want to waste any more time. The defendant so informed the victim, who turned around and proceeded back to the defendant's vehicle on Hawley Street.

Upon arriving at the defendant's car, the victim stated that he wanted the $4 back. According to the defendant, he told the victim that he would not return the money because he had earned it and, in fact, that the victim still owed him for his services. The defendant then exited the victim's car and drove away. The defendant acknowledged that he had also told the victim not to return to the Bayview shopping plaza, but insisted that at no time had he ever threatened the victim. The defendant further testified that he had not been in possession of a knife or any other weapon during his encounter with the victim.

The defendant also testified with regard to the failure to appear charge. He admitted that when he first appeared in court on December 7, 1992, he was ordered by the judge to return to court on December 21, 1992. The defendant acknowledged that he had disobeyed the court's order by failing to appear on that date, but stated that he could not recall why he had not appeared.

Additional facts will be set forth as they become relevant.

On appeal, the defendant claims that the trial court improperly: (1) failed to give a curative instruction after the prosecutor, in his closing argument to the jury, made certain comments that impermissibly infringed upon the defendant's right to be present throughout the trial; (2) granted the state's motion to consolidate for trial the failure to appear count with the other counts; (3) denied the defendant's motion for a judgment of acquittal on the failure to appear charge due to insufficient evidence; (4) instructed the jury on the crime of failure to appear; (5) limited the defendant's testimony with respect to the failure to appear charge; (6) instructed the jurors concerning their duty not to discuss the case with anyone during the pendency of the trial; (7) instructed the jury on reasonable doubt and the presumption of innocence; and (8) committed, as a result of the cumulative effect of the above noted improprieties, harmful error. We agree with the defendant that the trial court should have given a curative instruction to the jury after improper argument by the prosecutor during his summation to the jury and that those comments, in the absence of such an instruction, require a new trial on the kidnapping, robbery and unlawful restraint counts.[7] Because we reject the defendant's other claims, however, we affirm the judgment of conviction rendered against him as to the failure to appear count.[8]

---

[7] The objectionable argument of the prosecutor related solely to the kidnapping, robbery and unlawful restraint charges, and not to the failure to appear charge. Because the prosecutor's remarks could not possibly have prejudiced the defendant in his defense of the failure to appear count, those comments do not require reversal of the defendant's conviction on that count.

[8] The defendant also claims that the trial court improperly refused to instruct the jury on the charge of larceny in the sixth degree as a lesser included offense of robbery. In light of our conclusion that the defendant

I

The defendant claims that certain comments made by the prosecutor during his closing argument to the jury violated his rights under the sixth and fourteenth amendments to the United States constitution and under article first, § 8, of the Connecticut constitution.[9] Specifically, he contends that the prosecutor improperly argued to the jury that the defendant, because he was present in court throughout the trial, was able to tailor his testimony to that of the state's witnesses who, in contrast to the defendant, were subject to the trial court's sequestration order. We agree with the defendant that the prosecutor's argument invited the jury to draw an inference adverse to the defendant solely because he asserted his constitutional right to be present at trial and, consequently, that those comments unreasonably interfered with the defendant's free exercise of that right. We further conclude that under the particular circumstances of this case, the argument was not harmless beyond a reasonable doubt and, therefore, that the defendant is entitled to a new trial on the kidnapping, robbery and unlawful restraint charges.

is entitled to a new trial on the robbery charge, we need not consider this claim, which is based upon the specific facts adduced at trial.

[9] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the assistance of counsel for his defense." This right is applied to state prosecutions through the due process clause of the fourteenth amendment to the federal constitution; *Pointer* v. *Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Munoz*, 233 Conn. 106, 153 n.1, 659 A.2d 683 (1995); which provides in relevant part: "[N]or shall any state deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . [and] to be confronted by the witnesses against him . . . . No person shall be . . . deprived of . . . liberty . . . without due process of law . . . ." The defendant does not claim that he is entitled to additional protections under the state constitution, and therefore we rest our decision on the federal constitution.

The following additional facts and procedural history are necessary to our resolution of this issue. On the day before trial commenced, the defendant moved for an order requiring the sequestration of the state's witnesses. The state responded by moving for the sequestration of the defense witnesses, noting further that it had no objection to the defendant's motion so long as any sequestration order was equally applicable to both parties. The trial court granted both motions.[10]

At the conclusion of the evidence, the prosecutor, during his closing argument to the jury, made the following statement: "Now also consider, you notice that the witnesses come in and out and there's no witnesses in court, while the other witnesses are testifying, and that ensures that you're going to hear just that person's version of the story. They're not going to doctor it up to fit the other person's version of the story. There's one witness in this case who heard every other witness testify. He heard the whole story before he told you the story. That means when the defendant took the stand, and I would submit to you that during the three days of trial, hearing all of the witnesses, the defendant had ample time to doctor up his version of the story.

---

[10] General Statutes § 54-85a and Practice Book § 876 afford the parties in a criminal case the right, upon proper motion, to an order prohibiting the attendance of any witness at a hearing or trial when that witness is not actually testifying. General Statutes § 54-85a provides that "[i]n any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying." Practice Book § 876 provides that "[t]he judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which he is not testifying."

As we have stated previously, "[t]he purpose of a sequestration order [under General Statutes § 54-85a and Practice Book § 876] is to prevent a witness from fashioning his testimony to correspond to the statements of others in the courtroom . . . including the statements of counsel." (Citation omitted.) *State* v. *Stovall*, 199 Conn. 62, 67–68, 505 A.2d 708 (1986).

He just didn't do a good job of it." Defense counsel did not immediately object to these remarks but, rather, urged the jury, in his closing argument, to reject the prosecutor's contention, asserting that the defendant would have been able to devise a more self-serving scenario had he in fact chosen to lie about his encounter with the victim. Upon completion of the closing arguments of counsel,[11] however, and before the trial court had commenced its instructions to the jury, the defendant moved for a mistrial or, in the alternative, for a curative instruction, claiming that the prosecutor's argument had improperly infringed upon his constitutional right to be present throughout the trial. The trial court denied the defendant's request both for a mistrial and for a curative instruction.

"The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek*, 204 Conn. 683, 707, 529 A.2d 1245 (1987); *State* v. *Reardon*, 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and fourteenth amendments to the United States constitution; *Davis* v. *Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas*, supra [403]; and by article first, § 8, of the Connecticut constitution. *State* v. *Torello*, 103 Conn. 511, 513, 131 A. 429 (1925)." *State* v. *Hufford*, 205 Conn. 386, 400–401, 533 A.2d 866 (1987). "The right of *physical* confrontation is a . . . fundamental component of the [federal and state confrontation] clauses"; (emphasis added) *State* v. *Jarzbek*, supra, 692; and guarantees an accused "the right to be present in the courtroom at every stage of his trial." *Illinois* v. *Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).[12]

---

[11] The prosecutor did not again make reference to the defendant's presence at trial during his brief rebuttal argument to the jury.

[12] Furthermore, a defendant is *required* to be present at trial, unless otherwise authorized by the court, under Practice Book § 968, which provides:

Like cross-examination, "face-to-face confrontation [at trial] . . . ensure[s] the integrity of the factfinding process"; (citation omitted; internal quotation marks omitted) *Coy* v. *Iowa*, 487 U.S. 1012, 1019–20, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988); because "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' " Id., 1019. Thus, "[i]t is widely recognized that physical confrontation contributes significantly, albeit intangibly, to the truth-seeking process . . . . In addition, physical confrontation furthers other goals of our criminal justice system, in that it reflects respect for the defendant's dignity and the presumption of innocence until proven guilty." *State* v. *Jarzbek*, supra, 204 Conn. 695. Indeed, the literal right to "confront" one's accusers is so deeply rooted in "human feelings of what is necessary for fairness [that] the right of confrontation 'contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails.' " *Coy* v. *Iowa*, supra, 1018–19, quoting *Lee* v. *Illinois*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986). Because of the important goals furthered by an accused's right to encounter adverse witnesses face-to-face, the free exercise of that right may not be impaired absent a compelling justification for the infringement.[13] See, e.g.,

"—Continued Presence Not Required

"The defendant must be present at the trial and at the sentencing hearing, but if he will be represented by counsel at the trial or sentencing hearing, the judicial authority may:

"(1) Excuse him from being present at the trial or a part thereof or the sentencing hearing if he waives the right to be present;

"(2) Direct that the trial or a part thereof or the sentencing hearing be conducted in his absence if the judicial authority determines that he waived his right to be present; or

"(3) Direct that the trial or a part thereof be conducted in his absence if the judicial authority has justifiably excluded him from the courtroom because of his disruptive conduct, pursuant to Sec. 892."

[13] In light of a defendant's constitutional right to be present at trial, the provisions of General Statutes § 54-85a and Practice Book § 876, pursuant to which a witness may be precluded from attending the trial when not

*Maryland* v. *Craig*, 497 U.S. 836, 850, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) ("defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured"); *State* v. *Jarzbek*, supra, 704–705 (exclusion of defendant during testimony of minor victim of sexual assault warranted only upon clear and convincing showing by state of compelling need to do so).

The defendant asserts that his right to a face-to-face confrontation with the state's witnesses was unfairly burdened as a consequence of the prosecutor's argument to the jury that the defendant, as the "one witness in this case who heard every other witness testify," was the only person who had been able "to doctor up his version of the story" to "fit" the testimony of other witnesses. The state contends that this argument was proper because it was simply a statement of the obvious, namely, that the defendant was present during the entire trial and the state's witnesses were not. We disagree with the state. Although the jury was undoubtedly cognizant of the defendant's presence throughout the trial, it is by no means certain that the jurors were also aware of the fact that the other trial witnesses were not permitted in the courtroom when not testifying. Moreover, the jurors were never apprised of the defendant's constitutional right to be present at all stages of the trial; of his obligation to be present, unless excused, under Practice Book § 968; see footnote 12; or of the existence of the court's sequestration order. This information, if provided to the jury, would have at least placed the prosecutor's comments in a fairer, more complete, context.

actually testifying; see footnote 10; do not apply to a defendant in a criminal case.

More fundamentally, however, the prosecutor, in clear, direct and unambiguous terms, urged the jury to conclude that the defendant, *solely by virtue of his presence throughout the trial and in stark contrast to the sequestered state witnesses*, had been able to concoct a story tailored to meet the state's case.[14] Simply stated, the prosecutor's argument placed too high a price on the defendant's exercise of his right to a face-to-face encounter with the witnesses adverse to him.[15]

[14] The state does not contend either that the prosecutor intended to convey any other meaning or that the jury could have construed his remarks in any other way. Cf. *State* v. *Negron*, 221 Conn. 315, 325, 603 A.2d 1138 (1992) (in ascertaining whether prosecutor's comments have encroached upon defendant's right to remain silent, we must determine whether "the language used [was] manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify"). Indeed, in defending the propriety of his argument to the trial court in response to the defendant's request for a curative instruction, the prosecutor relied only upon the fact that the defendant had been present throughout the trial. The prosecutor's response was as follows:

"[Defense counsel] is right. The defendant has an absolute right to attend court and confront and have counsel cross-examine the witnesses against him; however, if he chooses to exercise that right, it's fair comment on the part of the State. For example, if he takes the stand in his own defense, the State can comment on his demeanor on the stand, can impeach his credibility, and can generally comment on the testimony that the defendant produces from the stand, and that in no way impedes his right to take the stand in his own defense. If the defendant doesn't take the stand in his own defense, the State can't comment on his silence because that would be shifting the burden.

"It is a fact readily observable by the jury that the defendant is in court and does get to hear all of the other witnesses. And then the defendant, after hearing all that, takes the stand and testifies. It's fair comment, then, for the State to be able to discredit the defendant's testimony by means of the fact that he heard everyone else's testimony. It in no way works a deprivation of due process. He's got all the process that he's due. And, I don't know how the State's comments on facts readily observable to the jury could possibly be prejudicial. There's no authority on this point. I don't think it's misconduct, and I think the [defendant's] motion should be denied."

[15] The United States Supreme Court has rejected an argument similar to that made by the state in prohibiting comment on the defendant's failure to testify: "[C]omment on the refusal to testify . . . is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the

It is well settled that a violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right. See, e.g., *North Carolina* v. *Pearce*, 395 U.S. 711, 724, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (practice of imposing heavier sentence on defendants after conviction upon retrial impermissibly chilled exercise of basic constitutional rights); *Shapiro* v. *Thompson*, 394 U.S. 618, 629–31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (state may not condition receipt of welfare benefits on durational residence requirement because to do so penalizes constitutionally protected right to travel); *United States* v. *Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968) (statute permitting imposition of death penalty only on defendants convicted after trial and not on those who plead guilty unduly impairs capital defendants' constitutional right to trial); see also *United States* v. *Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) ("while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right"); *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L.

[accused's fifth amendment] privilege by making its assertion costly. *It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. . . . What a jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."* (Citations omitted; emphasis added.) *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). This principle also applies to such comments made by a prosecutor, unreinforced by the court's instructions. Id., 615; see also *State* v. *Marra*, 222 Conn. 506, 534–35, 610 A.2d 1113 (1992).

Ed. 2d 604 (1978) ("for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional' "); *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 33, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (same); *State* v. *Sutton*, 197 Conn. 485, 500, 498 A.2d 65 (1985), cert. denied, 474 U.S. 1073, 106 S. Ct. 833, 88 L. Ed. 2d 204 (1986) (" '[t]o punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort" ' "). Thus, "[w]hatever might be said of [the state's] objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." (Citations omitted.) *United States* v. *Jackson*, supra, 582.

Inviting the fact finder to draw an inference adverse to a defendant solely on account of the defendant's assertion of a constitutional right impermissibly burdens the free exercise of that right and, therefore, may not be tolerated. See, e.g., *Zant* v. *Stephens*, 462 U.S. 862, 885, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983) (aggravating factor would be invalid if it "authorizes a jury to draw adverse inferences from conduct that is constitutionally protected"); *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (statement by court or prosecutor inviting jury to draw adverse inference due to defendant's failure to testify violates constitution as "a penalty imposed by courts for exercising a constitutional privilege"). In arguing to the jury that the defendant had been able to "doctor up" his testimony simply because, in contrast to the state's witnesses, the defendant had been present during the entire trial, the prosecutor invited the jury to draw an inference adverse to the defendant solely because of the defendant's exercise of his constitutional right to confront the witnesses

against him. Although a question of first impression in this state, similar prosecutorial comments have been disapproved as constitutionally infirm by those courts in other jurisdictions that have considered them.[16] See *Dyson* v. *United States*, 418 A.2d 127, 131 (D.C. App. 1980); *Jenkins* v. *United States*, 374 A.2d 581, 584 (D.C. App.), cert. denied, 434 U.S. 894, 98 S. Ct. 274, 54 L. Ed. 2d 182 (1977); *State* v. *Jones*, 71 Wash. App. 798, 809–11, 863 P.2d 85 (1993), review denied, 124 Wash. 2d 1018, 881 P.2d 254 (1994).

It is true, of course, that when the defendant elected to testify, he placed his credibility in issue, thereby subjecting himself to cross-examination under "the same rules and tests which could by law be applied to other witnesses." *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986). Moreover, the prosecutor, in his closing argument, was free to challenge the defendant's version of the facts by reference to any evidence properly adduced at trial. Indeed, because the state's case hinged entirely upon the uncorroborated testimony of the victim, the relative credibility of the victim and the defendant necessarily was the focus of the prosecutor's summation to the jury. Although the prosecutor was entitled to argue his case forcefully, however, he was not free to assert that the defendant's presence at trial had enabled him to tailor his testimony to that of other witnesses.[17] Such argument exceeded the bounds of fair

---

[16] We note that the prosecutor's comment also burdened the defendant's exercise of his constitutional right to testify in his own behalf, an entitlement rooted in the guarantees of the fifth, sixth and fourteenth amendments to the United States constitution. See *Rock* v. *Arkansas*, 483 U.S. 44, 51–53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *State* v. *Paradise*, 213 Conn. 388, 404, 567 A.2d 1221 (1990). Because the defendant has not raised this claim, however, we do not base our decision on it.

[17] We do not hold that the prosecutor was prohibited from arguing to the jury that the defendant had tailored his testimony to fit the state's case. On the contrary, such argument would not have been objectionable had it been linked solely to the evidence and not, either directly or indirectly, to the defendant's presence at trial.

comment because it unfairly penalized the defendant for asserting his constitutionally protected right to confront his accusers at trial.[18]

Our inquiry does not end here, however, for we must determine whether the impropriety requires reversal of the defendant's convictions on the kidnapping, robbery and unlawful restraint charges. Because the prosecutor's argument impermissibly infringed upon his rights guaranteed under the confrontation clauses of the federal and state constitutions, he is entitled to a new trial on those counts unless the state can establish that the objectionable comments were harmless beyond a reasonable doubt. See *Coy* v. *Iowa*, supra, 487 U.S. 1021; *State* v. *Lewis*, 211 Conn. 185, 190, 558 A.2d 237 (1989); see also *State* v. *Sauris*, 227 Conn. 389, 413, 631 A.2d 238 (1993). We conclude that under the particular facts of this case, the state cannot sustain its burden.

Because the defendant and the victim were the only witnesses with firsthand knowledge of the pertinent events, the state's case against the defendant rested *solely* upon the testimony of the victim, which was, in all material respects, uncorroborated.[19] Similarly, the

---

[18] As we have indicated, the state contends that the prosecutor's closing argument did not impair the defendant's rights under the confrontation clauses of the federal and state constitutions. The state does not claim, however, that even if the prosecutor's comments did constitute such an infringement, they may nevertheless be justified either by an overarching state interest; see, e.g., *Maryland* v. *Craig*, supra, 497 U.S. 850; *State* v. *Jarzbek*, supra, 204 Conn. 704–705; or by conduct or argument of the defendant. See *United States* v. *Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988) (prosecutor's comment on defendant's failure to testify permissible in view of defense argument to jury that government prevented defendant from testifying); *Illinois* v. *Allen*, supra, 397 U.S. 337 (trial court may cause defendant to be removed from courtroom when such removal is warranted due to defendant's disruptive behavior during trial).

[19] For example, the jackknife allegedly used by the defendant was never recovered. The only evidence adduced by the state that arguably tended either to corroborate the victim's testimony or to buttress his credibility was the testimony of two police officers, who explained that the victim had reported the incident to them soon after it had occurred.

defendant's affirmative contention that he had not engaged in any of the criminal misconduct alleged by the state was based entirely upon his own testimony. The jury's principal task, therefore, was to determine which of these two witnesses to believe, making their credibility decisive to the outcome of the case. Indeed, both the state and the defendant, in final argument, acknowledged that the relative credibility of the two men was the only truly contested issue in the trial. Because the prosecutor's improper argument served to discredit the defendant's testimony and to bolster the victim's credibility, that argument was central to the critical question to be resolved by the jury.

Furthermore, although the defendant sought a curative instruction at the conclusion of closing argument, the trial court declined to take any remedial action. The jury should have at least been informed of the defendant's constitutional right to be present throughout the trial *and* instructed to disregard the prosecutor's improper argument.[20]

We acknowledge that the prosecutor's objectionable comments were relatively brief and not made in bad faith.[21] We further acknowledge that we have in the past

---

[20] The defendant's argument to the jury that it should reject the prosecutor's claim that the defendant's presence at trial had afforded him the opportunity "to doctor up his version of the story" was not a sufficient substitute for a curative instruction by the trial court. In view of the fact that the prosecutor's comment unfairly impaired the defendant's constitutionally protected right to be present throughout the trial proceedings, only a forceful admonition to the jury by the trial court could have sufficed to mitigate the harm to the defendant caused by the improper argument. Furthermore, because the prosecutor's remarks served to focus the jurors' attention on an issue altogether inappropriate for their consideration, the trial court's brief admonition during its charge to the jury that the arguments of counsel are not evidence was not sufficient to reduce the risk of prejudice to the defendant.

[21] The prosecutor's response to the defendant's motion for a mistrial or, in the alternative, for a curative instruction, reflected his belief that the challenged portion of his argument was appropriate. See footnote 14. Indeed, the state argues on appeal that that argument was in all respects proper.

rejected due process claims predicated on a "single questionable prosecutorial statement"; *State* v. *Ross*, 230 Conn. 183, 227, 646 A.2d 1318 (1994), cert. denied, U.S. , 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); see also *State* v. *Joyner*, 225 Conn. 450, 473, 625 A.2d 791 (1993); *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990); and on prosecutorial comment that, while imprudent or objectionable, was not blatantly egregious. See, e.g., *State* v. *Hammond*, 221 Conn. 264, 289–90, 604 A.2d 793 (1992); *State* v. *Tweedy*, 219 Conn. 489, 508–10, 594 A.2d 906 (1991); *State* v. *Watlington*, 216 Conn. 188, 191–93, 579 A.2d 490 (1990). In most such cases, however, the challenged argument did not itself directly implicate a constitutional right and was not otherwise so flagrant as to prompt an objection by the defendant. See, e.g., *State* v. *Hammond*, supra, 289–90; *State* v. *Tweedy*, supra, 508–10; *State* v. *Watlington*, supra, 191–93; *State* v. *Oehman*, 212 Conn. 325, 333–38, 562 A.2d 493 (1989). In this case, by contrast, the defendant not only objected to the prosecutor's remarks, but those remarks, which struck at the heart of the critical issue in a closely contested case, infringed upon the defendant's constitutional right to be present throughout the trial. Finally, although the objectionable comments did not reflect a "deliberate prosecutorial disregard of express judicial directions or established rules of fair play"; *State* v. *Fullwood*, 194 Conn. 573, 584, 484 A.2d 435 (1984); we have long recognized that the fairness of the trial, rather than the culpability of the prosecutor, is the linchpin for evaluating claims of improper prosecutorial argument. See, e.g., *State* v. *Williams*, 204 Conn. 523, 539–40, 529 A.2d 653 (1987).

Because the state's case rested entirely upon the uncorroborated testimony of the victim; because the relative credibility of the defendant and the victim was critical to the jury's resolution of the case; because there was no independent evidence of the crimes to

assist the jury in that determination; and because the trial court failed to give a curative instruction as requested by the defendant, we are not persuaded beyond a reasonable doubt that the jury was not influenced by the prosecutor's improper closing argument. The state, therefore, has failed to establish that the remarks were harmless. Accordingly, the defendant is entitled to a new trial on the kidnapping, robbery and unlawful restraint charges.[22]

## II

The defendant also claims that the trial court improperly granted the state's motion to consolidate for trial the failure to appear charge with the kidnapping, robbery and unlawful restraint charges.[23] We are not persuaded.[24]

"General Statutes § 54-57 and Practice Book § 829 expressly authorize a trial court to order a defendant to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial,

[22] The defendant also asserts that certain other allegedly improper comments made by the prosecutor during closing argument, though not objected to at trial, deprived him of a fair trial on all counts, including the failure to appear charge. Because the defendant did not preserve this issue, the scope of our review is limited under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see footnote 27; to claims of a constitutional magnitude. Our careful examination of the record reveals that the other prosecutorial argument identified by the defendant as objectionable did not infringe upon any constitutional right, including the defendant's due process right to a fair trial. See, e.g., *State* v. *Hammond*, supra, 221 Conn. 289–90; *State* v. *Watlington*, supra, 216 Conn. 192–93. Accordingly, the defendant cannot succeed on this claim of impropriety.

[23] The defendant does not contend that the kidnapping, robbery and unlawful restraint charges, which all arose out of the same incident, should not have been tried together.

[24] The defendant also claims that the consolidation of the failure to appear count with the kidnapping, robbery and unlawful restraint charges unduly prejudiced him in his defense of the latter three charges. Because we conclude that the defendant is entitled to a new trial on those three charges, we do not reach that claim.

the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice and that any resulting prejudice was beyond the curative power of the court's instructions. . . . [W]hether a joint trial will be substantially prejudicial to the rights of the defendant . . . means something more than that a joint trial will be less advantageous to the defendant. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings*, 216 Conn. 647, 657–58, 583 A.2d 915 (1990).

Furthermore, we have identified "several factors that a trial court should consider in determining whether severance is required in order to avoid the omnipresent risk . . . that although so much of the evidence as would be admissible upon any one of the charges might not persuade the jury of the accused's guilt, the sum of it will convince them as to all. . . . These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) Id., 658; see also *State* v. *Herring*, 210 Conn. 78, 94–98, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); *State* v. *Boscarino*, 204 Conn. 714, 720–23, 529 A.2d 1260 (1987). Application of these factors to this case persuades us that the trial court did not abuse its discretion in consolidating the failure to appear count with the kidnapping, robbery and unlawful restraint counts.

First, the charges consolidated for trial involved two unrelated and readily distinguishable factual scenarios: (1) the failure to appear charge arose from the defendant's failure to present himself in court as required on December 21, 1992; and (2) the remaining charges stemmed from the defendant's conduct with the victim on December 27, 1992. Because the failure to appear charge involved conduct by the defendant that was not related to the conduct underlying the kidnapping, robbery and unlawful restraint counts, the proof adduced by the state with respect to each of the two separate cases was altogether different. Accordingly, there was no risk that the jury would confuse the evidence presented on the two matters.

Second, although the state's evidence on the kidnapping, robbery and unlawful restraint counts indicated that the defendant had threatened the use of violence in the commission of those offenses, the defendant's alleged conduct was neither so brutal nor so shocking as to have aroused the passions of the jury against him. Furthermore, the trial court properly instructed the jury, both prior to trial and again in its final charge, that each count constituted a separate crime and, therefore, was to be considered separately. We have no reason to believe, therefore, that the jury's ability to consider objectively and dispassionately the evidence on the failure to appear count was in any way compromised by the joinder of that charge with the kidnapping, robbery and unlawful restraint counts.

Third, the trial was of short duration, requiring testimony from only a few witnesses. In addition, the evidence introduced by the state to establish the defendant's guilt on each of the four counts was neither complex nor confusing. Moreover, any possible risk of juror confusion was further mitigated by the fact that the state first presented its entire case on the failure to

appear count, followed by its evidence on the remaining three counts.

We conclude, therefore, that the consolidation of the four counts for trial did not result in any undue prejudice to the defendant on the failure to appear charge. Accordingly, the trial court did not abuse its wide discretion in granting the state's motion for consolidation.

### III

The defendant next contends that the evidence offered by the state on the failure to appear count was not sufficient to establish his guilt on that charge beyond a reasonable doubt. Specifically, the defendant contends that the state did not prove that he had wilfully failed to appear in court as required.[25] We disagree.

"[I]n order to prove the wilful element of [the offense of failure to appear in the first degree in violation of] General Statutes § 53a-172, the state must prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." (Internal quotation marks omitted.) *State* v. *Cerilli*, 222 Conn. 556, 583–84, 610 A.2d 1130 (1992), quoting *State* v. *Can-*

---

[25] "As a preliminary matter, the defendant argues that appellate review of a claim of evidentiary sufficiency should be limited to the evidence of the record at the close of the state's case. He advocates, therefore, that we abandon the so-called 'waiver rule,' announced in *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984), which provides that if the defendant elects to introduce evidence after the trial court denies his motion for judgment of acquittal, appellate review 'encompasses the evidence in toto,' including evidence introduced by the defendant. See *State* v. *Hufford*, 205 Conn. 386, 391 n.5, 533 A.2d 866 (1987); *State* v. *Simino*, 200 Conn. 113, 118, 509 A.2d 1039 (1986); *State* v. *Lizzi*, 199 Conn. 462, 464, 508 A.2d 16 (1986); but see *State* v. *Williams*, 202 Conn. 349, 351 n.3, 521 A.2d 150 (1987). We need not address this argument because, as we conclude hereinafter, the evidence introduced by the state was sufficient to prove the essential element of [wilfulness]." *State* v. *Medina*, 228 Conn. 281, 302–303 n.28, 636 A.2d 351 (1994).

*dito*, 4 Conn. App. 154, 157, 493 A.2d 250 (1985). In reviewing the defendant's claim that the evidence was insufficient to establish wilfulness, we must first construe the evidence in the light most favorable to the state. We must then determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993).

The state adduced the following evidence in its case-in-chief. The defendant was arrested on November 25, 1992, charged with a felony, and released on his promise to appear in court. The promise to appear form executed by the defendant contained the following acknowledgment by the defendant: "I understand that *IF I FAIL TO APPEAR*, in accordance with the foregoing promise, *I WILL BE COMMITTING THE CRIME OF FAILURE TO APPEAR* and be subject to [the penalty provided for by law]." (Emphasis in original.) The defendant appeared in court as required on December 7, 1992, at which time the trial court continued his case until December 21, 1992, and ordered the defendant to return to court on that date. The defendant, however, did not appear in court on December 21, 1992. In addition, the docket sheet for December 21, 1992, contains no indication that the defendant contacted court personnel to explain his absence or to seek a further continuance of his case.

The jury reasonably could have concluded from the state's evidence that the defendant knew that he was required to appear in court on December 21, 1992, and that his failure to do so was likely to result in his prosecution for the offense of failure to appear. The state also established that the defendant was not in court on December 21, 1992, and, furthermore, that there was

no indication that he had attempted to contact the court to report his inability to appear on that day. On the basis of these undisputed facts, the jury was entitled to infer that the defendant, with full knowledge of the December 21, 1992 court date, had deliberately chosen to ignore the court's order that he return to court on that date.[26] Accordingly, the defendant cannot prevail on his claim of insufficient evidence.

## IV

The defendant further claims that the trial court's jury charge on the "wilful" element of the failure to appear count was constitutionally deficient, thereby requiring reversal of his conviction on that count. Because the defendant did not properly preserve this claim at trial, he seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[27] Although we agree with the defendant that the record is adequate

---

[26] Our determination, contrary to the defendant's assertion, is consistent with our holding in *State* v. *Cerilli*, supra, 222 Conn. 583, wherein we concluded that the trial court's jury instructions on the "wilful" element of the crime of failure to appear, much like those given in this case; see part IV of this opinion; improperly either relieved the state of its burden of establishing that element of the offense or shifted the burden to the defendant. In *Cerilli*, we concluded only that the trial court may not, in effect, *direct* the jury to draw an inference of wilfulness from the state's evidence. Nothing in *Cerilli*, however, or in any other authority cited by the defendant, *precludes* a jury from drawing an inference of wilfulness if warranted by the state's evidence.

[27] In *Golding*, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

to review this claim and that the challenged instruction was constitutionally impermissible, we conclude that the error was harmless beyond a reasonable doubt.

In its instructions to the jury, the trial court explained the elements of the failure to appear charge as follows: "The essential elements of the offense of failing to appear, each of which the State must prove beyond a reasonable doubt are: one, the defendant was released on bail or other procedure of law upon a condition that he appear personally in connection with his criminal proceeding at a future given date; two, that on December [21], 1992 . . . the defendant was required to appear before a court in connection with the charge; three, that the defendant willfully failed to appear as required. [I]n this connection, you are advised that the act is done willfully if done knowingly, intentionally, or deliberately. If you find beyond a reasonable doubt that [the] defendant received notice of the date on which he was [to] appear before the court, and that he failed to appear on that date, then you may infer his failure to appear was willful. *You are instructed, however, that the State need not prove an intentional failure to appear. The mere showing by the State that the defendant failed to appear on his scheduled date is sufficient to establish a prima facie case.*" (Emphasis added.)

The defendant contends, and the state concedes, that this instruction was improper. Language identical to the last two sentences of the above-quoted portion of the charge was held to be unconstitutional in *State* v. *Cerilli,* supra, 222 Conn. 584. The state claims, however, that, as in *Cerilli,* the error was harmless in view of the overwhelming evidence of wilfulness. We agree with the state.

In its case-in-chief, the state adduced undisputed evidence that the defendant had notice of his court date,

that he did not appear on that date, and that he had not attempted to notify the court of his inability to do so. Although this evidence was sufficient to permit the jury to draw an inference of wilfulness; see part III of this opinion; it was not so powerful as to warrant a conclusion that the improper instruction, in light of the strength of the evidence, was harmless beyond a reasonable doubt. On direct examination, however, the defendant not only admitted that he had not come to court on the required date, but also that he could not recall any reason why he had failed to do so. Furthermore, on cross-examination, the defendant expressly acknowledged that he had disobeyed the judge's order of December 7, 1992, requiring his return to court on December 21, 1992. These admissions constitute overwhelming evidence that the defendant had received and deliberately ignored the notice to appear on December 21. Accordingly, there is no reasonable possibility that the trial court's erroneous instruction "misled [the jury] into convicting him without also finding that his failure to appear was wilful." Id., 585.

V

The defendant's next claim is that the trial court improperly precluded his testimony, purportedly relevant to his defense of the failure to appear charge, that he had not retained counsel as of December 21, 1992. This claim is also without merit.

The following brief factual recitation is necessary to our disposition of this claim. The state's evidence established that the defendant, at his court appearance on December 7, 1992, had sought the appointment of a public defender. The court informed the defendant, however, that he was not eligible for the services of appointed counsel and, accordingly, denied his application. The court further informed the defendant that he would have two weeks before his next court appearance

on December 21, 1992, to attempt to retain private counsel. On direct examination, the defendant was asked if he had in fact retained counsel as of that date. The trial court sustained the state's objection to the question on relevancy grounds. On appeal, the defendant claims that he was entitled to have the jury know that he was not represented as of December 21, and, therefore, that he did not have counsel to remind him of his required court appearance.

"The trial court has broad discretion in determining the relevancy of evidence. . . . Rulings on such matters will be disturbed on appeal only upon a showing of a clear abuse of discretion. . . . We have consistently held that evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Alvarez*, 216 Conn. 301, 309, 579 A.2d 515 (1990). Furthermore, because the defendant's claim is nonconstitutional in nature, he bears the burden of establishing that any error was harmful. *State* v. *Williams*, 231 Conn. 235, 250, 645 A.2d 999 (1994).

The defendant has failed to demonstrate that the trial court abused its substantial discretion in precluding, as irrelevant, testimony by the defendant that he had not obtained counsel by December 21, 1992. There is nothing in the record to suggest that the court's order of December 7, 1992, directing the defendant to return to court two weeks later was in any way conditioned upon the defendant's retention of counsel on or before that date. Indeed, the defendant does not claim to have harbored the belief that he was not required to appear in court on December 21, unless he had retained counsel by then. Furthermore, the defendant has never claimed, either at trial or on appeal, to have forgotten that he was required to be in court on December 21. Thus, the defendant has failed to establish that the trial court

improperly precluded his proffered testimony on relevancy grounds.[28]

## VI

The defendant next claims that the jury was not properly informed of its duty to refrain from discussing the case during the pendency of the trial. Although we agree with the defendant that the trial court did, on one occasion, improperly instruct the jury with respect to its obligation not to communicate about the case, we nonetheless conclude that the defendant is not entitled to relief.

The following facts are necessary to our resolution of this issue. On the first day of trial, the court, immediately prior to the first recess, properly admonished the jury not to discuss the case, instructing them as follows: "Now you have heard some testimony in this case. And under the oath I told you I would talk about, you agreed and swore that you would not discuss any of the testimony in this case among yourselves or with anyone else, anyone at home or you should happen to meet on the street or any other jurors that you know from the other building until the case is finally completed and you receive the law from me, the judge, and you go and deliberate." Immediately after this instruction, the trial court informed the jury that, to avoid repeated reiteration of the admonition in full, he would thereafter simply remind the jury to "remember the admonition."

At the end of the first day of trial, however, the court improperly instructed the jury as follows: "[Y]ou're not to discuss this matter, the testimony. *You can discuss the charge, in other words, you can tell somebody what the charge is or what the charges are, but don't discuss any of the testimony with anyone.*" (Emphasis added.)

---

[28] We note, in addition, that the defendant has provided no explanation as to how he was prejudiced by the trial court's evidentiary ruling.

The defendant did not object to the admonition or otherwise bring the matter to the attention of the trial court.

At the conclusion of trial on the next court day, September 27, 1993, the trial court told the jury to "[r]emember the admonition about not discussing the matter." At the end of the next day, September 28, the trial court again instructed the jury to "[r]emember the admonition." The evidentiary phase of the trial concluded just prior to the lunch recess on the following day, September 29, at which time the trial court repeated the same abbreviated admonition.

After the lunch recess on September 29, the court instructed the jury on the law of the case and immediately thereafter the jury began its deliberations. Because the jury had not reached a verdict by the end of the day, the trial court dismissed the jury with the following admonition: "Now, since this matter is going overnight, it becomes my duty to instruct you further that you are not to discuss any of your deliberations with anyone home or any of the evidence home . . . ." On the next day, September 30, the trial court again cautioned the jury, just prior to its lunch break, as follows: "Remember the admonition about not discussing the case among yourselves. The only time you can discuss it is when all of you are together in the jury room." The jury reached its verdict after lunch.

The defendant, having failed to preserve his claim, seeks to prevail under *Golding* or, in the alternative, under the plain error doctrine, claiming that the improper language deprived him of a fair trial. We are not persuaded.

The state acknowledges that the trial court's admonition to the jury was improper because it authorized jurors to communicate with others about the charges pending against the defendant. Jurors should be told by the court in clear and unambiguous terms that they

are not to discuss *any* aspect of the case with anyone, including each other, during the pendency of the trial, and that they may not communicate with each other about the case until they have been instructed by the court to begin their deliberations. See General Statutes § 1-25;[29] Practice Book § 850.[30]

As the state points out, however, the defendant has not established that there was any reasonable possibility that the improper admonition served to undermine the integrity of the trial. The trial court never reiterated the erroneous instruction, and the jurors were repeatedly reminded that they were not to discuss the case with anyone, including each other, until their deliberations. Moreover, even if one or more of the jurors had "told somebody . . . what the charges [were]," no such juror could have believed, on the basis of the trial court's instructions, that he or she was authorized to say anything more about the case or to discuss anything about it. In such circumstances, the defendant cannot establish a violation of constitutional magnitude and, consequently, he cannot prevail under *Golding*.

---

[29] General Statutes § 1-25 provides in relevant part: "Forms of oaths. The *forms of oaths shall be as follows, to wit* . . . FOR PETIT JURORS IN CRIMINAL CAUSES. You solemnly swear by the name of the ever-living God, (or affirm, as the case may be) that you will, without respect of persons or favor of any person, well and truly try, and true deliverance make, between the state of Connecticut and the defendant, whom you shall have in charge, according to law and the evidence before you; your own counsel, and your fellows', you will duly observe and keep; you will speak nothing, to any one, of the business or matters you have in hand, but among yourselves, nor will you suffer any one to speak to you about the same, but in court; so help you God. . . ."

[30] Practice Book § 850 provides in relevant part: "—Oath and Admonitions to Trial Jurors

"The judicial authority shall cause the jurors selected for the trial to be sworn or affirmed in accordance with Gen. Stat., §§ 1-23 and 1-25. The judicial authority shall admonish the jurors not to read, listen to or view news reports of the case or to discuss with each other or with any person not a member of the jury the cause under consideration, except that after the case has been submitted to the jury for deliberation the jurors shall discuss it among themselves in the jury room. . . ."

Relying primarily on *State* v. *Robins*, 34 Conn. App. 694, 705, 643 A.2d 881 (1994), aff'd on other grounds, 233 Conn. 527, 660 A.2d 738 (1995), the defendant also seeks relief under the plain error doctrine. See Practice Book § 4185.[31] In *Robins*, the Appellate Court reviewed a similarly unpreserved claim, raised by the defendant as plain error, challenging a jury instruction that, in terms significantly more expansive than the language at issue here, improperly authorized the jury to discuss the case with others during the pendency of the trial.[32] The court in *Robins* concluded that the improper instruction constituted such a serious departure from the dictates of Practice Book § 850 that a remand to the trial court was necessary so that an evidentiary hearing could be conducted to determine whether jury impartiality had been compromised.[33]

In the circumstances of the present case, however, we are persuaded that the trial court's lone objectionable admonition, when viewed in the context of the court's other instructions on juror communications, created no reasonable possibility of prejudice to the defendant. "We repeatedly have observed that plain error is not even implicated unless 'the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992)." *State* v. *Day*,

---

[31] Practice Book § 4185 provides in relevant part: "Errors Considered

"The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[32] In *State* v. *Robins*, supra, 34 Conn. App. 705, the trial court instructed the jury that "when you go home and discuss [the case] with people that are living home with you, your husbands, your children, any other relative, what you can say is, you can discuss the personalities if you wish. You can discuss what the charges are. But you cannot discuss the evidence."

[33] Although the defendant contends that his conviction should be reversed under the plain error doctrine, he also asserts that "[a]t minimum, a remand for an evidentiary hearing is required."

233 Conn. 813, 849, 661 A.2d 539 (1995). Because the defendant has not demonstrated that a failure to grant him relief would result in manifest injustice; id.; his claim of plain error must fail.

## VII

The defendant further maintains that the trial court's jury instructions on reasonable doubt, presumption of innocence and the role of the jury were improper. As the defendant concedes with respect to each of these claims of instructional error, however, we have previously upheld the challenged language in the context of the jury charge as a whole. See, e.g., *State* v. *Ellis*, 232 Conn. 691, 705, 657 A.2d 1099 (1995) ("[a] reasonable doubt is a doubt for which a valid reason can be assigned"); *State* v. *Francis*, 228 Conn. 118, 134, 635 A.2d 762 (1993) (jury serves as " 'an arm of the court' " and is obliged to " 'render a verdict of guilty if the facts and the law require such a verdict' "); *State* v. *Stanley*, 223 Conn. 674, 695–96, 613 A.2d 788 (1992) (" 'the law is made to protect society and innocent persons and not to protect guilty ones' "); *State* v. *Derrico*, 181 Conn. 151, 171 n.4, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980) ("reasonable doubt is not such a doubt as may be raised by one questioning for the sake of raising a doubt"); *State* v. *Lamme*, 19 Conn. App. 594, 607–608, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990) (reasonable doubt is "real doubt, an honest doubt"). We conclude that none of the challenged instructions, when properly considered in the broader context of the trial court's instructions in their entirety, diluted the state's burden of proof or otherwise misled the jury in any way.

## VIII

Finally, the defendant asserts that even if no one of the claimed improprieties rendered his trial unfair, the

cumulative effect of all of them warrants reversal. We have previously declined the invitation to "create a new constitutional claim in which the totality of the alleged constitutional error is greater than the sum of its parts"; *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); *State* v. *Robinson*, 227 Conn. 711, 746–47, 631 A.2d 288 (1993); and we do so again today.

The judgment is reversed only as to the kidnapping, robbery and unlawful restraint counts and the case is remanded for a new trial on those counts. The judgment as to the failure to appear count is affirmed.

In this opinion PETERS, C. J., and BORDEN, BERDON and KATZ, Js., concurred.

CALLAHAN, J., dissenting. The majority concludes that a single isolated comment by the prosecutor during a lengthy closing argument following a seven day trial at which the defendant was present and cross-examined the state's witnesses, violated the defendant's federal constitutional right to confront the witnesses against him.[1] I disagree.[2]

---

[1] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This provision applies to the states through the fourteenth amendment. *Pointer* v. *Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

Although the majority briefly mentions the state constitutional right of confrontation, I do not understand the majority to hold that the scope of the right of confrontation is in any way greater under the state constitution than it is under the federal constitution. I will, therefore, restrict the scope of my analysis to the defendant's claim under the federal constitution.

[2] Typically, claims of impropriety in closing argument are analyzed under the due process clause. See, e.g., *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Oehman*, 212 Conn. 325, 335, 562 A.2d 493 (1989). A due process violation based on prosecutorial misconduct during closing argument involves a two-step analysis. First, the court must determine whether the comment at issue was improper. If the court concludes that it was, it must then determine the likely impact of the comment since " 'improper summation results in a denial of due process [only] when the

" '[T]he protection that the confrontation clauses afford to a criminal defendant is not . . . absolute.' " *State* v. *Bonello*, 210 Conn. 51, 55, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 3268, 106 L. Ed. 2d 612 (1989); *State* v. *Jarzbek*, 204 Conn. 683, 693, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). For instance, the confrontation right is not violated when the hearsay statements of an unavailable declarant are introduced at a criminal trial if those statements bear adequate indicia of reliability. *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). Nor is that right violated when a declarant's out-of-court statements are admitted at trial so long as the declarant is present at trial to repeat his story and is subject to cross-examination. *California* v. *Green*, 399 U.S. 149, 157–58, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). Additionally, the videotaped testimony of a child victim taken outside the physical presence of the defendant is admissible when that practice "will enhance the truth-seeking function of the criminal trial." *State* v. *Bonello*, supra, 61. Also, a defendant may be physically removed from the courtroom during his own trial if his obstreperous behavior disrupts the trial.

---

improper statements cause *substantial prejudice* to the defendant.' *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)." (Emphasis added.) *State* v. *Oehman*, supra, 336. The majority does not engage in this analysis but rather finds a violation of the defendant's sixth amendment right to confront the witnesses against him. The main distinction between the due process analysis and the confrontation clause analysis is that in order to make out a due process claim, the defendant must demonstrate "substantial prejudice" arising from the improper comment. *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). Under the confrontation clause, the defendant bears no burden of proving prejudice. The state has the burden of proving harmlessness beyond a reasonable doubt. If the majority analyzed the defendant's claim under the due process analysis, I do not believe that the defendant could make the requisite showing of "substantial prejudice" given the fact that "we have never held that a single questionable prosecutorial statement is sufficient to implicate the fairness of the trial itself." *State* v. *Ross*, 230 Conn. 183, 227, 646 A.2d 1318 (1994), cert. denied,     U.S.     , 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995).

*Illinois* v. *Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353, reh. denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970); *Sekou* v. *Warden*, 216 Conn. 678, 696, 583 A.2d 1277 (1990). In sum, a defendant's sixth amendment rights to be physically present at his own trial and to cross-examine adverse witnesses not only may be compromised, but, under certain circumstances, may be eliminated altogether. The majority concludes, however, that the prosecutor was not permitted to argue to the jury that it could consider, in assessing the defendant's credibility as a witness, the fact that his presence during trial provided him with an opportunity to tailor his testimony to that of other witnesses.

I find it difficult to understand how the sixth amendment right to confrontation may be completely denied to a defendant for a variety of reasons, but that a prosecutor may not ask a jury, when assessing a defendant's credibility, to consider his opportunity, afforded by his presence in the courtroom, to tailor his testimony. It is illogical to say that a defendant's right to be present at his own trial may be abrogated entirely based on the state's countervailing interest in an orderly proceeding, but that the defendant's presence may not even be alluded to during closing argument when the countervailing state interest relates directly to an important aspect of the truth-seeking process, i.e., the jury's ability to assess fairly the credibility of all the witnesses. It is the search for truth, after all, that is the "primary object" of the confrontation clause. *Douglas* v. *Alabama*, 380 U.S. 415, 418–19, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); see *Ohio* v. *Roberts*, supra, 448 U.S. 66; *California* v. *Green*, supra, 399 U.S. 158; *State* v. *Bonello*, supra, 210 Conn. 59–61 ("policy of promoting the search for truth as the basis for abridging the defendant's right to face-to-face confrontation with his accuser" where victim was a child). The majority opinion makes that search

more difficult by limiting the jury's opportunity to assess all relevant factors pertaining to the defendant's credibility.

Undoubtedly the defendant had a right to be present throughout his trial, to confront and cross-examine the witnesses against him and to testify. Undoubtedly he did those things. Once he had testified, however, he did not have a right to prevent the state from attempting to impeach his credibility or a right to have his presence in the courtroom during the testimony of previous witnesses ignored. As the majority concedes, a defendant who testifies on his own behalf occupies the same position as that of any other witness. *Brown* v. *United States*, 356 U.S. 148, 154–55, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958); *State* v. *Schroff*, 198 Conn. 405, 412, 503 A.2d 167 (1986). When the defendant elected to exercise his fifth amendment right to testify in his own defense, he directly placed his credibility in issue and opened the door to fair comment upon considerations affecting his veracity. See *State* v. *Pollitt*, 205 Conn. 132, 157, 531 A.2d 125 (1987); *State* v. *Ryerson*, 201 Conn. 333, 348, 514 A.2d 337 (1986). Prior to the decision in this case, "[i]t [was] well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. *State* v. *Carter*, 189 Conn. 631, 640, 458 A.2d 379 (1983). A defendant cannot both take the stand and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses. *State* v. *Palozie*, 165 Conn. 288, 298, 334 A.2d 468 (1973)." *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986). I would adhere to the well established rule that once a defendant takes the stand, he is subject to impeachment as is any other witness even if there is arguably a tangential chilling effect on the confrontation right. We should not allow the defendant to use his

position as the accused to immunize his credibility from challenge.

Moreover, contrary to what is stated in the majority opinion, the prosecutor did not "[invite] the jury to draw an inference adverse to the defendant solely because of the defendant's exercise of his constitutional right to confront the witnesses against him." The prosecutor merely pointed out the obvious fact that the defendant had been physically present in the courtroom and had had the opportunity to hear the other witnesses. He therefore requested that the jury give the defendant's presence consideration in assessing his credibility. This is not a case such as *Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), where the court concluded that a prosecutorial comment deprived the defendant of his constitutional privilege against self-incrimination. In *Griffin*, the prosecutor asked the jury to infer from the defendant's silence that he was guilty of the crime charged. In the present case, the prosecutor asked only that the jury consider the defendant's unique opportunity to hear the other witnesses when assessing his credibility. He did not ask the jury to infer guilt because the defendant sat at counsel table. The prosecutor simply suggested to the jury that it consider the relationship between the defendant's testimony and that of the witnesses who preceded him when determining his credibility.

This case is more analogous to *United States* v. *Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988), than it is to *Griffin*. In *Robinson*, the defendant did not take the stand. In closing argument, the prosecutor told the jury that the defendant "could have taken the stand and explained [his side of the story] to you." Id., 26. The knee-jerk reaction to such a comment would be to find a *Griffin* violation. That reaction, however, ignores "[t]he principle that prosecutorial comment must be examined in context . . . ." Id., 33. The court

found no *Griffin* violation because the prosecutor's comment was made after defense counsel had argued to the jury that the government had not allowed the defendant to explain his version of the story.

The court emphasized that both sides in a criminal trial are entitled to fairness and concluded that the comment was therefore permissible: " '[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles*, 422 U.S. 225 [95 S. Ct. 2160, 45 L. Ed. 2d 141] (1975) . . . .' *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681 [106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986). To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another. The broad dicta in *Griffin* to the effect that the Fifth Amendment 'forbids . . . comment by the prosecution on the accused's silence,' [*Griffin* v. *California*, supra, 380 U.S. 615], must be taken in the light of the facts of that case. It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as [the] defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some 'cost' to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one." *United States* v. *Robinson*, supra, 485 U.S. 33–34. Just as it was a "fair response" for the prosecutor in *Robinson* to highlight the defendant's failure to take the stand in response to defense counsel's closing argument, I believe that the prosecutor in the present case should have been able to comment on the defendant's presence in the courtroom, particularly where it appears from the record that the

defendant's presence allowed him to slant his testimony to conform to that of the other witnesses.

The majority's blanket assertion that the sixth amendment's right to confrontation is violated whenever a prosecutor requests a jury to consider the defendant's presence at trial when assessing his credibility is unprecedented,[3] and elevates the sixth amendment to a previously unoccupied pedestal. No other constitutional right is immune from prosecutorial comment regardless of the nature of that comment or the circumstances surrounding it. See id., 33.[4]

---

[3] The majority claims that "similar prosecutorial comments have been disapproved as constitutionally infirm by those courts in other jurisdictions that have considered them. See *Dyson* v. *United States*, 418 A.2d 127, 131 (D.C. App. 1980); *Jenkins* v. *United States*, 374 A.2d 581, 584 (D.C. App.), cert. denied, 434 U.S. 894, 98 S. Ct. 274, 54 L. Ed. 2d 182 (1977); *State* v. *Jones*, 71 Wash. App. 798, 809–11, 863 P.2d 85 (1993), review denied, 124 Wash. 2d 1018, 881 P.2d 254 (1994)." In both *Dyson* and *Jenkins*, the court did find comments similar to those at issue in the present case to be "constitutionally infirm." The *infirmity* did not, however, necessarily rise to the level of a constitutional *violation*. Both *Dyson* and *Jenkins* treated the comments at issue under the standard due process analysis for allegedly improper prosecutorial comment. See footnote 2. Under that analysis, allegedly improper prosecutorial comments "must rise to the level of 'substantial prejudice' in order to justify reversal." *Dyson* v. *United States*, supra, 132. In *Jenkins*, the comments at issue did not rise to the level of substantial prejudice. *Jenkins* v. *United States*, supra, 584–85. In *Dyson*, the court did find substantial prejudice but in that case, the comment similar to that in the present case was accompanied by several other "constitutionally infirm" comments. It was this combination of improper comments that led to the due process violation rather than one comment in isolation. *Dyson* v. *United States*, supra, 132. Finally, *Jones* is inapposite because the comment at issue involved the defendant's eye contact with the victim during her testimony rather than a comment about allegedly tailored testimony. *State* v. *Jones*, supra, 810. Furthermore, the court in *Jones* found that comment to be harmless. Id., 812.

[4] In *State* v. *Ross*, 230 Conn. 183, 227, 646 A.2d 1318 (1994), we declined to find either a due process or a sixth amendment right to counsel violation when the prosecutor told the jurors that they could consider anything that they observed in the courtroom about the defendant when determining whether he was mentally ill at the time he committed the alleged offenses. Under the analysis of the majority opinion, the holding of *Ross* could very well have been different had the defendant specifically raised a confrontation

Even though permitting the prosecutor to mention the defendant's presence in the courtroom, like any other method of impeachment, may make a defendant think twice before testifying, it is not a violation of his sixth amendment right to confront his accusers. Certainly, any chilling effect based on the prosecutor's brief comment in this case is far less significant than the effect that impeachment via prior convictions has on a defendant's right to testify in his own defense. We have expressed no reluctance, however, to level the playing field by allowing the state, once a defendant has testified, to impeach the defendant's credibility with prior convictions. *State* v. *Brown*, 169 Conn. 692, 700–701, 364 A.2d 186 (1975). The admission of such evidence undoubtedly has a far greater and more direct adverse impact on the defendant's exercise of his constitutional right to testify in his own defense than a comment such as the prosecutor's in this case would have on a defendant's exercise of his constitutional right to be physically present at his own trial.

Furthermore, when a defendant testifies in a criminal case, the trial court routinely instructs the jury that the defendant's interest in the outcome of the case may be considered in assessing his credibility. We have, moreover, consistently said that such an instruction was proper, concluding that it did not violate the defendant's right to testify and did not constitute a due process violation.[5] *State* v. *Wright*, 198 Conn. 273, 280, 502 A.2d 911 (1986); *State* v. *Frazier*, 194 Conn. 233, 239, 478 A.2d 1013 (1984). I see very little difference in practical consequences to the defendant between such an instruction by the court and the prosecutor's comment

clause argument based on the prosecutor's comment on the defendant's presence at trial.

[5] In this case, as a matter of fact, despite the defendant's objection, the trial court allowed him to be cross-examined as to his interest in the outcome of the case. That evidentiary ruling has not been challenged on appeal.

in this case. In fact, the instruction, coming as it does from the judge, probably has a greater tendency to induce a jury to view a defendant's testimony with heightened skepticism than a remark such as the prosecutor made in this case.

The shaping of testimony by a witness to fit the testimony of previous witnesses does happen. That possibility is precisely the reason for the sequestration of witnesses. *State* v. *Falby*, 187 Conn. 6, 26–27, 444 A.2d 213 (1982); *State* v. *Pikul*, 150 Conn. 195, 200, 187 A.2d 442 (1962); see General Statutes § 54-85a. The fact that the defendant is not subject to sequestration and has a right to be present at all phases of his trial does not eliminate the problem, and the sixth amendment was not violated when the prosecutor made reference to it. In the context of an examination of the propriety of an attack on an accused's credibility, this court has approved Justice Cardozo's sentiment that " 'justice, though due to the accused, is due to the accuser also.' *Snyder* v. *Massachusetts*, 291 U.S. 97, 122, 54 S. Ct. 330, 78 L. Ed. 674 (1934)." *State* v. *McClendon*, supra, 199 Conn. 12. "Fairness is a double-edged sword and both sides are entitled to its benefit throughout the trial." Id. I would conclude that the prosecutor's comment in this instance was not an unconstitutional infringement on the defendant's right of confrontation.

I respectfully dissent.

NORCOTT, J., dissenting. I disagree with the majority opinion that any direct reference by a prosecutor to the defendant's presence at trial violates his sixth amendment right of confrontation. I do not believe that by asking the jury to consider, in evaluating the credibility of the defendant's testimony, that he had an opportunity to hear and thus conform his testimony to that of other witnesses, the state has necessarily burdened or

penalized the defendant's right to be present at trial. Such a comment, when made with some basis in the evidence for a good faith argument that the defendant has indeed tailored his testimony to that of another witness, does not invite the jury to draw an adverse inference that the defendant has lied, solely and directly from the fact of his presence at trial. Rather, the comment simply places before the jury a fact that is obvious to them and that constitutes a logical component of the argument that the defendant has in fact tailored his testimony, namely, the means by which he could have done so. When supported by evidence, the inference that such a comment advances is different in nature from comments on the defendant's exercise of his right to remain silent. The comment asks the jury, in determining whether the defendant's testimony is believable, to consider that he *could have* modified or supplemented his version of events to coincide, in some ways, with facts presented by other witnesses. The jury is not asked, at least expressly, to infer from the fact that he was present that he has indeed lied. Further, it appears that, according to the majority, a prosecutor may still argue to the jury that the defendant has tailored his testimony to that of other witnesses, including identifying relevant evidence and inferences in support of that argument. The rule of the majority simply prohibits the prosecutor from directly and explicitly commenting on the defendant's presence at trial as a component of that argument. I believe that this line of demarcation is unduly formalistic.

In this regard, I agree, therefore, with the dissenting opinion of Justice Callahan that in the present case, the prosecutor's reference during closing argument to the defendant's presence at trial did not violate his sixth amendment right of confrontation. I would emphasize, however, that this does not suggest that reference by the prosecutor to the defendant's presence at trial is

permissible in all circumstances. Such a comment, in the context of arguing that the defendant has tailored his testimony to that of other witnesses, must be supported by the evidence. See, e.g., *State* v. *Oehman*, 212 Conn. 325, 334–36, 562 A.2d 493 (1989) (prosecutor may not make comment or argument unsupported by evidence); *State* v. *Williams*, 204 Conn. 523, 544–45, 529 A.2d 653 (1987). I am satisfied in this case that it was.